Paulette EICHENHOLTZ, Individually and on behalf of all others similarly situated and derivatively on behalf of International Thoroughbred Breeders, Inc., Plaintiffs,

v.

Robert E. BRENNAN, First Jersey Securities, Inc., International Thoroughbred Breeders, Inc., Garden State Race Track, Inc., Rooney Pace, Inc., First Philadelphia Corporation, Kerry B. Fitzpatrick, John W. Allen, Joseph C. Daniel, Jr., Jack Price, Robert J. Quigley, Norman Rothstein, John J. Degnan, Richard J. Hughes, Ronald J. Riccio and Joseph K. Fisher, Defendants.

No. 86 Civ. 6380 (DNE).

United States District Court,
S.D. New York.

Jan. 15, 1988.

Paul D. Wexler, Bragar & Wexler, New York City, Glenn F. Ostrager, Barst & Mukamal, for plaintiffs.

Frederick B. Lacey, Jay G. Safer, and David S. Turetsky, LeBoeuf, Lamb, Leiby & MacRae, New York City, for defendants Robert E. Brennan, Kerry B. Fitzpatrick, John W. Allen, Joseph C. Daniel, Jr., Jack Price, Robert J. Quigley, Norman Rothstein, John J. Degnan, Richard J. Hughes, Ronald J. Riccio, and Joseph K. Fisher.

Lewis D. Lowenfels, Tolins & Lowenfels, New York City, for defendants, Intern. Thoroughbred Breeders, Inc., and Garden State Race Track, Inc., Leonard Barrack, Gerald J. Rodos, and Samuel R. Simon, Barrack, Rodos & Bacine, Philadelphia, Pa., of counsel.

Daniel J. Piliero II, Mark K. Stephens, and Maureen T. Kelly, Tighe, Curhan & Piliero, Washington, D.C., for defendant First Philadelphia Corp.

Frank H. Penski, and Michael G. Davies, Hargrave, Devans & Doyle, New York City, for defendants First Jersey Securities, and Rooney Pace, Inc., Robert A. Wayne, Robinson, Wayne, Levin, Riccio & La Sala, Newark, N.J., of counsel.

## MEMORANDUM AND ORDER

EDELSTEIN, District Judge:

Defendants, on a variety of grounds,[1] move to dismiss the instant complaint. Alternatively, the defendants move to transfer the action to the District of New Jersey pursuant to 28 U.S.C. Section 1404(a). Granting the motion to transfer, the court defers ruling on the motion to dismiss.

## THE CLAIM

Paulette Eichenholtz ("Eichenholtz"), on behalf of herself and all others similarly situated, alleges violation of the federal securities laws, in particular, section 10(b) of the 1934 Act and Rule 10b–5, and sections 11, 12 and 17 of the 1933 Act in regard to public offerings of International Thoroughbred Breeders, Inc. ("ITB") securities.[2] Eichenholtz also asserts a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. section 1961 et seq., and brings a shareholder derivative action claiming misconduct in ITB's investment in the Garden State Race Track in Cherry Hill, New Jersey.

## DISCUSSION

### TRANSFER OF VENUE

■■■ 28 U.S.C. Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil litigation to any other district or division where it might have been brought." In ruling on a motion to transfer venue pursuant to section 1404(a), appropriate areas of inquiry include:[3] where the operative facts oc-

---

1. Defendants assert that the plaintiff has failed to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). Further, defendants assert that certain claims asserted are time barred, and that defendant is without standing to present her claim pursuant to section 17 of the 1933 Securities Act. Regarding the plaintiff's derivative action, defendants argue that as the federal causes of action are defective, this pendent claim must be dismissed.

   As the court has determined that this action should be heard in New Jersey, the court defers ruling on defendants' arguments.

2. ITB, founded in October, 1980 to engage in the business of purchasing, owning, breeding, leas-

ing and selling thoroughbred horses, made public offerings of its securities on March 24, 1981, July 26, 1983, April 16, 1984, July 25, 1985, and May 14, 1986. Plaintiff asserts that material omissions were made in the prospectuses accompanying the 1983, 1984, and 1985 offerings. The defendants in this action include a wholly owned subsidiary of ITB, the underwriters of the offerings, and past and present ITB directors.

3. The decision of whether or not to transfer must ultimately turn on the particular facts of the case. In examining those facts, and in reaching a determination, the district court is to use its broad discretion. *See Sheet Metal Work-*

curred, *Heyco v. Heyman,* 636 F.Supp. 1545, 1549 (S.D.N.Y.1986), the location of relevant witnesses and documents, *see Mobile Video Services, Ltd. v. National Association of Broadcast Employees and Technicians,* 574 F.Supp. 668, 670–71 (S.D.N.Y.1983), the convenience of the parties, *Matra et Manurhin v. International Armament Co.,* 628 F.Supp. 1532, 1535 (S.D.N.Y.1986), the plaintiff's choice of forum, *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), and the docket conditions of the transferor and transferee districts, *A. Olnick & Sons v. Dempster Brothers, Inc.,* 365 F.2d 439, 445 (2d Cir.1966). In short, the court should consider those factors relevant to the task of making the resolution of a case "easy, expeditious and inexpensive." *Gulf Oil Corp.,* 330 U.S. at 508, 67 S.Ct. at 843, *see also Shulof v. Westinghouse Electric Corp.,* 402 F.Supp. 1262, 1263 (S.D.N.Y. 1975) (enumerating specific factors relevant to 28 U.S.C. section 1404(a)).

*Operative Facts:*

■ The core of this action involves ITB's business operations and the financial failure of the Garden State Race Track which is located in Cherry Hill, New Jersey. In 1983, ITB revealed it intended to rebuild the race track which had been destroyed by fire five years earlier. The financing of the project was to be arranged through public offerings of ITB securities. Garden State Race Track was reopened in 1985, but incurred substantial losses.

The alleged misstatements and omissions accompanying the offers, the basis of the federal causes of action asserted, relate to the viability of the Garden State Race Track and ITB's motives in pursuing the Garden State project. Thus, the federal claims asserted by plaintiff can be appreciated only by reference to the realities of the functioning of ITB, a corporation headquartered in New Jersey, and the Garden State Race Track, which is also located in New Jersey. Similarly, the derivative cause of action, which relates to alleged waste of corporate assets in connection with the Garden State Race Track, refers to events occurring in New Jersey.

Plaintiff nevertheless maintains that the operative facts of the instant action took place in New York. Specifically, Eichenholtz notes that the prospectuses in question were issued out of First Jersey Securities's New York City offices. Further, plaintiff states that defendants Rooney Pace and First Philadelphia Corporation are present in New York and presumes that they provided their "fairness opinions" in this district. Plaintiff's Memo. at 67. Thus, Eichenholtz claims the fraud took place in New York rather than New Jersey.

Regardless of where the alleged fraud actually occurred, in order to prove that fraud, the focus of discovery and testimony will involve the following matters: the acquisition, construction and operating costs of Garden State Park, the past history of operations at Garden State Park and the contemporaneous economic climate for race tracks and gambling in general in the southern New Jersey region. These matters all involve events that occurred within New Jersey. Thus, this court finds that the concentration of operative facts argues in favor of a transfer to New Jersey.

*Location of Witnesses and Documents:*

The location of the relevant witnesses and documents in the instant case also supports a transfer to New Jersey. The majority of witnesses in this case reside in New Jersey.[4] Furthermore, all the doc-

---

ers' National Pension Fund v. Gallagher, 669 F.Supp. 88, 91–92 (S.D.N.Y.1987); *Mobile Video Services, Ltd. v. National Association of Broadcast Employees and Technicians,* 574 F.Supp. 668, 670 (S.D.N.Y.1983).

**4.** The defendants ITB and Garden State Park, Inc. ("Garden State") plan to call the following persons as witnesses in this action: Robert E. Brennan, Chairman ITB and Chairman, Garden State, who lives in Brielle, New Jersey; Kerry S. Fitzpatrick, President, Chief Executive Officer, and Chief Financial Officer, ITB who resides in Crosswicks, New Jersey; Robert J. Quigley, Vice President, ITB and Director and President, Garden State, who lives in Vorhees Township, New Jersey; Arthur Winkler, Secretary, ITB and Secretary, Garden State, who lives in West Windsor, New Jersey, Dawn Kerr, Director and Treasurer Olde English Equine Insurance Agency, Inc., who resides in East Windsor, New Jersey, and William H. Warner, Treasurer, ITB and

uments pertaining to the construction and operation of Garden State Park are in the southern New Jersey region. The primary contractor [5] for the reconstruction of Garden State Park was Torcon–Costanza Construction Co., Inc. of Pennsauken, New Jersey. All of their books, records and documents pertaining to Garden State Park are kept and maintained in New Jersey. In addition, the documents pertaining to the history and operation at Old Garden State Park, up to the time its grandstand-clubhouse was destroyed by fire in April 1977, are located at the offices of the New Jersey Racing Commission in Trenton, New Jersey.[6] All of ITB's books, records and documents pertaining to its thoroughbred breeding operation as well as its records and documents pertaining to its equine insurance business are located at its headquarters in East Windsor Township in central New Jersey. Thus, it is apparent that the majority of witnesses and relevant documents are located in New Jersey. Accordingly, the location of the documents and witnesses in the instant case argues in favor of a transfer of venue to the District of New Jersey.

*Convenience of the Parties and Plaintiff's Choice of Forum:*

Convenience of the parties is relevant to the determination of an application to transfer venue pursuant to 28 U.S.C. section 1404. *Matra et Manurhin v. International Armament Co.*, 628 F.Supp. 1532, 1535 (S.D.N.Y.1986). In the instant case,

the convenience of the parties, as demonstrated by the respective residences of the parties, calls for a transfer of venue. *See Heyco v. Heyman*, 636 F.Supp. 1545, 1550 (S.D.N.Y.1986) (residence of parties relevant to transfer). Although bringing suit in New York, plaintiff is a New Jersey resident, specifically, a resident of Matawan Township, Monmouth County. Furthermore, most of the defendants are New Jersey residents. ITB is a Delaware corporation whose headquarters and principal place of business are located in East Windsor Township in Mercer County, New Jersey. ITB does not have an office in New York. Furthermore, six of the eleven individual defendants reside in New Jersey, while only two reside in New York. Additionally, the Cherry Hill, New Jersey branch of First Jersey Securities handled the Plaintiff's account.

██ A plaintiff's choice of forum is to be given considerable deference. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Nevertheless, the plaintiff's choice of forum is not necessarily dispositive. *Flintkote Co. v. Allis–Chalmers Corp.*, 73 F.R.D. 463, 466 (S.D.N.Y.1977). The plaintiff's choice of forum is given less weight where, as here, the plaintiff is not a resident of the forum and the cause of action is minimally connected with the forum. *See Kieffer v. E.F. Hutton & Co.*, No. 83 Civ. 6802, slip op. (S.D.N.Y. April 19, 1984) [Available on

Treasurer, Garden State, who lives in Toms River, New Jersey. ITB and Garden State also intend to call ITB's auditors, Mortenson, Fleming, Grizzetti, and Boiko as witnesses. The auditors have their offices in Cranford, New Jersey. *See also* Affidavit of Frederick B. Lacey, December 4, 1986 (majority of witnesses New Jersey residents).

The plaintiff has not offered a list of witnesses. This omission argues against retaining the case in the Southern District of New York. *See Shulof v. Westinghouse Electric Corp.*, 402 F.Supp. 1262, 1264 (S.D.N.Y.1975).

**5.** The major subcontractors on the reconstruction of Garden State Park are also located in the southern New Jersey area. The major subcontractors were Taylor, Wiseman, Taylor (structural engineers; Mt. Laurel, New Jersey), Daglee Seating (grandstand installers; Philadelphia, Pennsylvania), James J. Martin (sheet rock

installers; Cherry Hill, New Jersey), Herman Goldner (plumbing and heating; Philadelphia, Pennsylvania), John B. Kelly (masonary; Philadelphia, Pennsylvania), Jones Ceiling (Cherry Hill, New Jersey), Ferry Fence (fencing, Gloucester City, New Jersey) and Horner & Carter (traffic engineering, Medford, New Jersey).

**6.** The Garden State Race Track project was subject to stringent regulation by the State of New Jersey. Further, the New Jersey government assisted in the financing of the project and undertook a study of the project's economic feasibility. *See* N.J.Stat.Ann. section 34:1B–7.5(a) (West 1982) (New Jersey Economic Development Authority is required to study feasibility of project before extending financing). Those documents and witnesses relevant to the regulation of ITB and relevant to the Garden State Race Track feasibility study are to be found in New Jersey.

202

WESTLAW, 1984 WL 221]; *CES Publishing Corp. v. Dealerscope, Inc.*, 544 F.Supp. 656, 662 (E.D.Pa.1982). Furthermore, the instant case involves a derivative suit and an action brought on behalf of a class. In a class action, the named plaintiff's choice of forum is afforded little weight because in such a case, there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim. *See Koster v. Lumbermens Mutual Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947); *Shulof v. Westinghouse Electric Corp.*, 402 F.Supp. 1262, 1263 (S.D.N.Y.1975). Similarly, plaintiff's choice of forum is also afforded less defference in a shareholder's derivative suit. *Foster v. Litton Industries, Inc*, 431 F.Supp. 86, 87 (S.D.N.Y.1977).

In this action, the plaintiff is a New Jersey resident who is bringing an action pertaining to transactions that have occurred in the state of New Jersey. In light of these facts, the court will not have plaintiff's choice of forum override the interests of the defendants in litigating this action in New Jersey.

*Docket Conditions:*

■ The relative docket conditions of the transferor and transferee courts are relevant to the determination of a motion to transfer venue pursuant to 28 U.S.C. section 1404(a). *A. Olnick & Sons v. Dempster Brothers Inc*, 365 F.2d 439, 445 (2d Cir.1966). The docket conditions, however, are not dispositive of such a motion. *Dow Jones & Co. v. Board of Trade*, 539 F.Supp. 190, 192–3 (S.D.N.Y.1982); *Foster v. Litton Industries, Inc.*, 431 F.Supp. 86, 88 (S.D.N.Y.1977).

The relative congestion of the dockets for the Southern District of New York and the District of New Jersey does not clearly call for either the transfer or retention of the instant case.[7] However, for the twelve month period ending June 30, 1986, 10,647 cases were filed in the District Court for the Southern District of New York. This represents a 6.1% increase over the prior year's filings, and resulted in a 2.4% increase in pending cases relative to the previous year. W. Dornette & R. Cross, *Federal Judiciary Almanac 1987* 692 (1987). In contrast, for the same twelve month period, 5,507 cases were filed in the District Court for the District of New Jersey. This represents a decrease of 13.6% compared with the prior years's filings, and resulted in a decrease of 0.8% in pending cases relative to the previous year. *Id.* at 662. Thus, the court believes that given the facts of the instant case, a transfer to the District of New Jersey would not be an unwarranted or overly onerous imposition.

*Public Perception:*

In opposing the motion to transfer venue, plaintiff notes that prominent New Jersey citizens are included among the defendants in this case.[8] Given the prominence of these defendants, Eichenholtz claims that an appearance of impropriety could be best avoided by trying the case in New York. This argument does not merit discussion, and is rejected by this court.

CONCLUSION

In summary, it is apparent that the operative facts of the instant case occurred in New Jersey. Furthermore, the majority of the witnesses and the relevant documents are to be found in that State. There is a local interest in having localized controver-

**7.** During the twelve month period ending June 30, 1986, 5,552 cases were pending in the District of New Jersey. The District of New Jersey is alloted fifteen permanent judgeships. During that same period, 10,893 cases were pending before the Southern District of New York. The Southern District of New York is alloted twenty seven permanent judgeships. W. Dornette & R. Cross, *Federal Judicial Almanac 1987* (1987) 662, 692. Currently, there are three judge's positions vacant in the Southern District of New York. There is one judge's position vacant in

the District of New Jersey. The greater proportion of vacancies in the Southern District of New York effectively increases each serving judge's case load and argues in favor of a transfer of venue.

**8.** The defendants include Richard J. Hughes, a former Governor of New Jersey and former Chief Justice of the Supreme Court of New Jersey, and John J. Degnan, a former Attorney General of New Jersey.

sies decided at home. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The transactions transpired in New Jersey and New Jersey citizens should judge the events that occurred in their own state. The party that requests a transfer of venue bears the burden of establishing that the transfer is warranted. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). In the instant case, defendants have clearly demonstrated that a transfer of venue would serve to facilitate and expedite the ultimate resolution of this action.

The defendant's motion to transfer the case to the United States District Court for the District of New Jersey is granted. In particular, as the operative facts and events in this case occurred in southern New Jersey, the case is transferred to the Camden, New Jersey vicinage of that court. The Clerk of the District Court for the Southern District of New York shall transfer all records and papers in this action to the Clerk of the District Court for the District of New Jersey, along with a certified copy of this memorandum and order.

SO ORDERED.