**In re NEMATRON CORPORATION SECURITIES LITIGATION.**

**This Document Relates To:** The original complaint filed by Plaintiff MARK LE-VINE and any subsequently filed complaints and related actions.

No. 98 Civ. 3309(RWS).

United States District Court, S.D. New York.

Dec. 7, 1998.

Schoengold & Sporn, New York City by Samuel P. Sporn, Jay P. Saltzman, of counsel, for Plaintiffs.

Kleinberg, Kaplan, Wolff & Cohen, New York City by David Parker, of counsel, Dykema Gossett, Ann Arbor, MI by Andrew J. McGuinness, Kent P. Talcott, of counsel, for Defendants.

## OPINION

SWEET, District Judge.

Defendants Nematron Corporation ("Nematron"), Frank G. Logan III ("Logan"), David P. Gienapp ("Gienapp") (together with Logan, the "Individual Defendants"), and First of Michigan Corporation ("First of Michigan") (collectively, "Defendants") have moved pursuant to 28 U.S.C. § 1404(a) to transfer this federal securities class action to the United States Court for the Eastern District of Michigan. For the reasons set forth below, the motion is granted.

### Parties

Plaintiff Mark Levine ("Levine"), who brings this action on behalf of himself and other similarly situated, resides in Nassau County in the State of New York.

Nematron is a Michigan corporation with its principal place of business in Ann Arbor, Michigan. Nematron designs, manufactures, and markets hardware and software products for use in manufacturing environments on a worldwide basis.

Logan, at all relevant times to this action, was Nematron's Chairman and Chief Executive Officer. He presently resides in Virginia Beach, Virginia, and works primarily in Nematron's Ann Arbor, Michigan, headquarters.

Gienapp, a resident of Michigan, is Nematron's Chief Financial Officer, Executive Vice President of Finance and Administration, and a member of the board of directors.

First of Michigan is a Delaware corporation with its principal place of business in Detroit, Michigan. It is an investment banking firm and was the underwriter for the June 5, 1996, offering.

Defendant KPMG Peat Marwick, LLP ("KPMG") is a large, international accounting firm. KPMG has its principal offices in New York, New York, and has more than

one hundred offices throughout the United States, including an office in Detroit, Michigan. At all relevant times to this action, KPMG acted as Nematron's independent auditors. The audits of Nematron were staffed out of the Detroit office.

### Prior Proceedings and Facts

On May 8, 1998, Levine, on behalf of himself and all other shareholders of Nematron similarly situated, filed a class action complaint (the "Complaint"), alleging violations of the federal securities laws, in particular, sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), Rule 10b–5, and sections 11, 12, and 20(a) of the Securities Act of 1933 (the "1933 Act"), by Nematron, its control officers and/or directors, and the underwriters of its secondary offering on June 5, 1996. The Complaint also alleges common law fraud.

On August 10, 1998, an order was entered appointing Levine as lead plaintiff. Levine purports to represent a class of persons who purchased Nematron's common stock on the open market ·during the period January 31, 1996, through April 28, 1998 (the "Class Period"). According to the Complaint, Defendants engaged in a common plan and scheme to defraud purchasers of common stock during that period. The Complaint alleges, *inter alia,* that Defendants falsely and misleadingly touted and made misrepresentations of material facts and omissions to state material facts concerning Nematron's revenues, net income, and earnings. Levine further alleges that registration statements and prospectuses accompanying a secondary offering made on June 5, 1996, of 1.2 million shares of stock at $9.00 per share referenced the alleged false and misleading financial statements.

The genesis for this action was a press release Nematron issued on April 28, 1998, in which Nematron disclosed that it had identified potential material adjustments to its financial statements for the fiscal years ending September 30, 1996, and 1997. The potential adjustments related to the accounting treatment for a contract between Nematron and General Motors Corporation ("GM") (the "GM Contract"). Nematron stated that the adjustments were material and that they would likely result in an approximately 15 percent increase in Nematron's reported losses during the Class Period.

As a result of the potential adjustments, KPMG notified Nematron that its auditors' reports on the consolidated financial statements as of September 30, 1997, and September 30, 1996, and for each of the two years then ended, should no longer be relied upon. KPMG also resigned as independent auditors for Nematron.

Defendants submit that in May 1998 Nematron hired Grant Thornton LLP ("Grant Thornton") as independent auditors to conduct a new audit for the period in question. On August 3, 1998, Nematron issued a press release announcing that Grant Thornton had determined that Nematron was not required to restate its financial results for fiscal years 1996 and 1997.

Defendants filed the instant motion on August 26, 1998. Oral arguments were heard on October 7, 1998, at which time the motion was deemed fully submitted.

### Discussion

#### Motion to Transfer Venue Under § 1404(a) Is Granted

##### A. Legal Standard Under § 1404(a)

Section 1404(a) provides that:

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. 1404(a). This section is a statutory recognition of the common law doctrine of *forum non conveniens* as a facet of venue in the federal courts. *See Wilshire Credit Corp. v. Barrett Capital Management Corp.,* 976 F.Supp. 174, 180 (W.D.N.Y.1997). Section 1404(a) strives to prevent waste " 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " *Wilshire,* 976 F.Supp. at 180 (*quoting Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)).

" '[M]otions for transfer lie within the broad discretion of the courts and are

determined upon notions of convenience and fairness on a case-by-case basis.'" *Linzer v. EMI Blackwood Music Inc.*, 904 F.Supp. 207, 216 (S.D.N.Y.1995) (*quoting In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d cir.1992) (*citing Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988))). The burden of demonstrating the desirability of transfer lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum "unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice." *Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F.Supp. 955, 962 (S.D.N.Y.1995); *see Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir.1989); *Austin v. International Bhd. of Teamsters–Airline Div. 2747*, 739 F.Supp. 206, 208 (S.D.N.Y.1990).

■ The defendant moving for transfer must, in essence, demonstrate "'that transfer is in the best interests of the litigation.'" *Linzer*, 904 F.Supp. at 216 (*quoting Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F.Supp. 81, 95 (S.D.N.Y.1995)); *see also Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978). The movant "must support the transfer application with an affidavit containing detailed factual statements relevant to the factors [to be considered by the court in its transfer decision], including the potential principal witnesses expected to be called and a general statement of the substance of their testimony." *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 987 (E.D.N.Y.1991).

■ The inquiry on a motion to transfer is two-fold. The court must first determine whether the action sought to be transferred is one that "might have been brought" in the transferee court. Second, the court must determine whether, considering the "convenience of parties and witnesses" and the "interest of justice," a transfer is appropriate. *Wilshire*, 976 F.Supp. at 180.

As to the first query, the parties do not dispute that the Eastern District of Michigan is a district where the action might have originally been brought. Pursuant to the 1933 Act and the Exchange Act, suits may be brought "in the district wherein the defendant is found or is an inhabitant or transacts business." 14 U.S.C. § 78aa; *see id.* § 77v(a). All of the Defendants here transact business in the Eastern District of Michigan. Therefore, it is only the second inquiry that requires examination.

■ In determining whether transfer is warranted "for the convenience of the parties and witnesses [and] in the interest of justice" under § 1404(a), courts generally consider several factors. The factors to be considered in the instant case include (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances. *See Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F.Supp.2d 203 (S.D.N.Y.1998) (*citing Wilshire*, 976 F.Supp. at 181); *see Constitution Reinsurance Corp. v. Stonewall Ins. Co.*, 872 F.Supp. 1247, 1250 (S.D.N.Y.1995); *Cento Group, S.p.A v. OroAmerica, Inc.*, 822 F.Supp. 1058, 1060 (S.D.N.Y.1993).

### B. The Relevant Factors Applied

■ Application of the delineated factors reveals that Defendants have met their burden under § 1404(a).

### 1. Convenience of Witnesses and Parties

"The convenience of parties and witnesses is considered 'the essential criteria under the venue statute,' and 'the most significant factor.'" *Cento Group*, 822 F.Supp. at 1060 (*quoting First City Fed. Sav. Bank v. Register*, 677 F.Supp. 236, 237 (S.D.N.Y.1988), and *Nieves v. American Airlines*, 700 F.Supp. 769, 773 (S.D.N.Y.1988), respectively). In the instant case, the majority of the key witnesses, as well as the Defendants (save KPMG and Logan), reside in Michigan. Of the fourteen lead plaintiffs, from the record

thus far it appears that only Levine is a resident of New York. These factors, on balance, weigh in favor of transferring the action to the Eastern District of Michigan.

According to Defendants, all or virtually all of the witnesses that Nematron, the Individual Defendants, and First of Michigan anticipate calling in their defense reside and/or work in Southeastern Michigan, within the boundaries of the Eastern District of Michigan federal court. Specifically, Defendants have identified at least twelve party and nonparty witnesses that they intend to call. Paul Tonietto, a Nematron employee who works in the Ann Arbor headquarters as an automotive sales manager, and Aldo Marcuzzi, who works for Nematron in its Ann Arbor headquarters as an automotive program manager, are expected to testify regarding the negotiations for the GM Contract. Both individuals reside in Windsor, Ontario, immediately across the Detroit River from the courthouse. Tina Raiford, Nematron's controller, who works and lives in Michigan, is expected to testify regarding the accounting treatment of the GM Contract. Timothy Maxwell ("Maxwell"), a former Nematron employee who served as company controller and lives in Michigan, is also likely to testify about the accounting treatment of the GM Contract. Mike David, who works in the Detroit office of First of Michigan and lives within the Eastern District of Michigan, is expected to testify about the June 5, 1996 secondary offering. Urban A. MacDonald, who was the Director of Corporate Finance at First of Michigan and had the supervisory responsibility for that offering, is expected to testify as a former employee of First of Michigan. He also lives within the Eastern District of Michigan. Karl LaPeer, who performed the investigation that was a significant part of First of Michigan's due diligence in connection with the June 5, 1996 offering and who lives in Michigan, is expected to testify as a former employee of First of Michigan. Peter M. Behrens, the Grant Thornton partner responsible for independent audits for fiscal years 1996 and 1997 is expected to testify about those audits. He works in Grant Thornton's Southfield, Michigan, office and resides within the Eastern District of Michigan. Richard David works in KPMG's Detroit, Michigan, office and lives within the Eastern District of Michigan. He is expected to testify about the KPMG independent audit for the fiscal years 1996 and 1997. Mark Borin, a manager in KPMG's Detroit office who lives within the Eastern District of Michigan, is expected to testify about that audit as well. Tom Yager, an employee of GM who works in GM's Pontiac, Michigan, office and lives within the Eastern District of Michigan, is expected to testify about the GM Contract and the determination of matter relating to the accounting of that contract. Finally, Mike Gerardi, one of Nematron's key contacts with GM, is expected to testify about the GM Contract. He resides within the Eastern District of Michigan, as do a number of additional potential witnesses from GM, assert Defendants.

Defendants urge that due to the potential for class members in every state, and the likelihood that few class members would even testify at trial, there is no reason to believe that the New York court is more convenient for any witnesses Levine may present. Moreover, claim Defendants, because the Nematron officers and management personnel who might be called to testify at trial, as well as the KPMG audit partners and manager, and First of Michigan officers and managers, virtually all reside or work regularly in Michigan, and because there are a significant number of nonmanagement employees of each of the defendants whose presence at trial would likely be deemed important, trial in New York would be a significant disruption to the operations of these businesses—particularly to Nematron, a relatively small high-tech company.

Additionally, Defendants contend that the two Individual Defendants are high-ranking Nematron officers and directors and that it would be a substantial burden to have such a large part of Nematron's senior management at trial in an inconvenient forum. Furthermore, submit Defendants, all of the Nematron executives responsible for the financial statement at issue live or work in Michigan. Nematron's principal offices are in Michigan and it has no offices in New York. The underwriter for the June 5, 1996 offering, First of Michigan, also has its principal of-

fices in Michigan. Each of the audits took place in Michigan and were staffed out of the Michigan offices of KPMG and Grant Thornton. Finally, if testimony from GM witnesses becomes necessary, transfer to Michigan would ease its procurement.

Levine counters that Logan presently resides in Virginia and has an office there, and although he claims to spend "more than one-half" of his time in Ann Arbor Defendants fail to clarify how much time he spends in Michigan. Therefore, determines Levine, it is no less inconvenient for Logan to testify in New York than in Michigan. Regardless of the time Logan spends in Michigan, his Virginia residence fails to provide sufficient weight on the scale of convenience to witnesses and parties to. topple the significant weight on the other side provided by the witnesses named by Defendants.

Levine also finds it significant that KPMG, an international public accounting firm, has not joined in the instant motion. He suggests that a New York venue is more convenient to KPMG, whose headquarters are in New York. However, Levine ignores first that KPMG has not opposed the transfer motion, and second that the relevant KPMG employees expected to testify all reside in Michigan.

Like Defendants, Levine has identified the nonparty witnesses whose testimony he desires. Levine expects employees and/or former employees of Imagination Systems and NemaSoft to testify as to the software sold to GM, the terms of the GM Contract, and the effectiveness of the products bought by GM pursuant to the GM Contract. Imagination Systems, located in Virginia, and NemaSoft, located in Massachusetts, are subsidiaries of Nematron that supplied software to GM under the GM Contract. Levine expects employees and/or former employees of Registrar & Transfer Co. ("R & T"), which provided and continues to provide Nematron with investor relations and marketing services, located in Cranford, New Jersey, to testify as to any material misrepresentations and/or omissions in Nematron's statements to the investing public, but not limited to, Nematron's relationship with GM, and the GM Contract. Finally, Levine expects Rachel Hill ("Hill"), who reported to former Nematron controller Maxwell and Gienapp, to testify concerning the accounting issues in question. Hill currently resides in Clifton Park, New York.

Of the witnesses identified by Levine, only Hill, and Levine himself, reside in New York. The other two are located neither in New York nor Michigan. Still, it is the nature of the testimony and not the number of prospective witnesses on each side that is important. *See Morgan Guaranty Trust Co. of N.Y. v. Tisdale*, No. 95 Civ. 8023, 1996 WL 544240, *5 (S.D.N.Y. Sept. 25, 1996) ("Assessing the degree to which a transfer would inconvenience witnesses entails not merely counting the parties' prospective witnesses, but considering which are likely to provide important testimony."). The crux of this action concerns the accounting treatment of the GM Contract. According to the Complaint, Levine alleges that during the Class Period, Nematron issued false and misleading financial statements concerning Nematron's revenues, net income, and earnings, and that the registration statements and prospectuses accompanying the June 5, 1996 secondary offering referenced the alleged false and misleading financial statements. The potential material adjustments to its financial statements identified by Nematron relate to the accounting treatment for the GM Contract.

The Complaint is premised upon a "fraud on the market" theory, such that matters within any particular plaintiff's individual knowledge would not be particularly relevant to the claims and likely defenses. It is well known that trials in securities class actions focus almost entirely on the defendants' conduct. While Levine resides in New York, and New York is obviously the most convenient forum for him, his testimony will most likely concern the more straightforward topic of the actual sale and purchase of stock and, as such, is less likely to be as controversial, complex, or extensive as that of the witnesses proposed by Defendants residing in Michigan. *See id.* Indeed, all any of the plaintiffs in this case can offer, as is usual in most securities fraud class actions, concerns the bare facts of his or her purchases, and discussions with Defendants or their represen-

tatives. Thus the residence of Levine or any of the other plaintiffs has diminished relevance. Moreover, the class Levine and the other lead plaintiffs seek to represent includes investors in all fifty states. If this case is tried, any plaintiffs not residing in New York would be required to travel irrespective of whether the trial is held in Michigan or New York.

As for the testimony of employees of Imagination Systems and NemaSoft, Defendants contend that while those entities allegedly coded the software that was ultimately sold to GM by Nematron, as evidenced by the Complaint there are no technical performance issues related to the software in the case and Imagination Systems and NemaSoft have no connection to the underlying dispute. Rather, the issues in this action relate to the accounting for a rebate under the GM Contract. The Nematron and GM employees responsible for negotiating the GM Contract and those with knowledge of the underlying dispute are in Michigan.

Regarding the need to call employees from R & T, Defendants point out that the Complaint does not allege that R & T had any involvement with Nematron's financial statements. Indeed, the Complaint does not even refer to R & T. Finally, as for Levine's assertion that Hill, a former Nematron employee—the only one identified by either party with ties to New York—will be a witness as to the accounting issues in question, Defendants submit that Nematron's present and former controllers, both of whom reside in Michigan, are expected to testify concerning the accounting issues and the fact that Levine can identify a former low-level Nematron employee currently living in New York is of no consequence.

Levine offers to accommodate any personnel in Michigan by deposing those witnesses in Michigan or another mutually agreeable locale and asserts that Defendants could minimize any inconvenience to their on-going business by electing to videotape the trial testimony of key employees. However, as Defendants aver, the possibility of videotaped testimony, although appropriate in certain circumstances, is not workable here where all of the material witnesses live or work in Michigan and have no connection with New York. Under the circumstances, the trial as proposed by Levine would consist almost entirely of videotaped testimony. Additionally, live testimony of Defendants is crucial in a case alleging fraud. Defendants' presence at trial is important so that their demeanor, as well as their words, can be open to judgment by the jury. *See Saminsky v. Occidental Petroleum Corp.,* 373 F.Supp. 257, 260 (S.D.N.Y.1974).

Moreover, given that the majority of witnesses who will be able to provide testimony regarding the key factual issues in dispute are in Michigan, it makes more sense to have the deposition of those outside of Michigan in an agreeable location and their trial testimony videotaped.

Because testimony more critical and extensive is likely to be provided by the parties and witnesses residing in Michigan, less inconvenience would result from trial there. Accordingly, examination of the convenience of witnesses and parties counsel transfer to the Eastern District of Michigan.

### 2. *Location of Documents and Ease of Access to Sources of Proof*

The location of documents and ease of access to sources of proof weighs in favor of transfer. "This factor is clearly an important consideration in motions to transfer pursuant to 28 U.S.C. § 1404(a)." *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.,* 734 F.Supp. 54, 58 (N.D.N.Y.1990) (*citing Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)); *see Linzer,* 904 F.Supp. at 217 (noting that "most efficient access to ... documents and witnesses [are] factors that strongly militate in favoring litigating this case in New York").

The vast majority of the documents that likely will be required for trial are located in Michigan. The documents relating to the GM Contract, and the accounting for that contract, are in the Michigan headquarters of Nematron and GM. Similarly, the documents relating to KPMG's auditor reports on the financial statements at issue are believed to be in KPMG's Detroit, Michigan office, and the documents relating to the Grant Thornton audit are in its Southfield, Michigan of-

fice. Those documents concerning the July 5, 1996, secondary offering are located at First of Michigan in Detroit.

Levine takes issue regarding the weight to be given this factor. He cites to the decision in *In re Glenayre Technologies, Inc. Securities Litigation,* 982 F.Supp. 294, 300 (S.D.N.Y.1997), in which the court noted that "the location of documents is irrelevant in the modern age of copying.... [D]ocuments can be copied and shipped to New York as easily as to an office in [another state]." Of course the documents at issue here could be copied and shipped to New York. Yet this would impose an extra cost that is unnecessary as it is anticipated that the documents in Michigan will likely be far greater in scope than relevant documents outside of Michigan. Accordingly, transfer will facilitate access to the relevant documents and records. *See Cento Group,* 822 F.Supp. at 1062; *Boreal Laser Inc. v. Coherent, Inc.,* 22 U.S.P.Q.2d 1559 (S.D.N.Y.1992); *see also Tisdale,* 1996 WL 544240, at *6; *Collier v. Stuart–James Co., Inc.,* No. 89 Civ. 5805, 1990 WL 55798, at *4–*5 (S.D.N.Y. Apr. 26, 1990).

### 3. *Locus of Operative Facts*

"Where the operative facts occurred is an obvious factor to consider." *Pall Corp. v. PTI Technologies, Inc.,* 992 F.Supp. 196, 200 (E.D.N.Y.1998). Courts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district. *See Viacom Int'l, Inc. v. Melvin Simon Prod.,* 774 F.Supp. 858, 867 (S.D.N.Y. 1991) (*citing Computer Horizons Corp. v. Knauer,* 483 F.Supp. 1272 (S.D.N.Y.1980)). This factor also supports the transfer to Michigan.

Aside from the sale and purchase of Nematron common stock in this district, the principal events underlying this dispute occurred in Michigan. The GM Contract was entered in Michigan. The contract was administered in Michigan. Nematron's 1996 and 1997 financial statements were prepared in Michigan. The due diligence for the June 5, 1996 offering occurred in Michigan. Finally, each of the independent audits transpired in Michigan. Michigan is the locus of operative facts in this lawsuit.

Levine correctly contends that Defendants could not have perpetrated their alleged national scheme to defraud Nematron shareholders without actually selling the Nematron shares in this district, among others. However, that the shares were directed to New York does not make it a forum which has a significant contact with the operative facts. "Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." *Purcell Graham, Inc. v. National Bank of Detroit,* No. 93 Civ. 8786, 1994 WL 584550, at *4 (S.D.N.Y. Oct. 24, 1994) (citations omitted) (finding transfer appropriate where material acts and omissions underlying plaintiff's complaint occurred in transferee district); *see Bortel v. JHM Mortgage Sec. L.P.,* No. C–94–20530, 1995 WL 7953 (N.D.Cal. Jan.5, 1995) (transferring securities fraud class action to Virginia because it was the factual center of the case, even though fourteen of the named plaintiffs resided in California); *IBJ Schroder Bank & Trust Co. v. Mellon Bank, N.A.,* 730 F.Supp. 1278, 1281 (S.D.N.Y.1990) (finding transfer appropriate where misleading documents issued by defendant were prepared in transferee forum). Michigan bears a much more intimate connection to the events underpinning this case than does New York, which has no greater connection than any other district in which any potential class member resides. *See Job Haines Home for the Aged v. Young,* 936 F.Supp. 223, 230 (D.N.J.1996) (concluding in a securities fraud class action that the only contact with the transferor court was the fortuitous circumstance that the class representative happened to reside in the state and stating that "New Jersey has no more connection with the transactions and conduct underlying the case than any other venue to which the material [containing false statements] was directed").

Certainly, suit could be brought in any district in which stock was purchased. *See* 15 U.S.C. §§ 77v, 78aa. However, of all the potential host districts, the Eastern District of Michigan is the logical situs for resolution of this dispute. Accordingly, this factor weighs in favor of transfer.

## 4. Availability of Process to Compel Attendance of Unwilling Witnesses

Neither Defendants nor Levine have identified any witness who would be unwilling to attend the trial of this action absent the compulsion of a subpoena. Because the key witnesses mentioned by Defendants reside in or closer to Michigan, any witness unwilling to appear can be adequately represented through deposition testimony. *See Westwood Ventures, Ltd. v. Forum Fin. Group,* No. 97 Civ. 514, 1997 WL 266970, at *5 (S.D.N.Y. May 19, 1997).

## 5. Relative Means of the Parties

Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered. *Hernandez,* 761 F.Supp. at 989; *see Pall,* 992 F.Supp. at 200 ("The Court may also consider ... whether a disparity between the parties exists with respect to their relative means, such as in the case of an individual plaintiff suing a large corporation").

Granted, Levine and the potential plaintiffs are likely individuals who are suing a corporation that possesses considerably greater financial assets. However, no showing has been made that litigating this action in Michigan would impose an undue hardship on the plaintiff class. Accordingly, this factor weighs neutrally in the overall analysis. *See Hernandez,* 761 F.Supp. at 989 (according factor little or no significance absent showing of disparity of means between corporate defendant and individual plaintiff).

## 6. Forum's Familiarity With Governing Law

It is assumed that the federal courts in both this district and the Eastern District of Michigan are equally familiar with the legal principles necessary to resolve this case. Accordingly, this factor does not favor either party.

## 7. Weight Accorded Plaintiffs' Choice of Forum

■ A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defen-

dant. *See Orb Factory,* 6 F.Supp.2d at 210; *Westwood Ventures,* 1997 WL 266970, at *2 (*citing Fontana v. E.A.R.,* 849 F.Supp. 212, 215 (S.D.N.Y.1994)); *Kolko v. Holiday Inns, Inc.,* 672 F.Supp. 713, 715 (S.D.N.Y.1987). Where the factors are equally balanced, the plaintiff is entitled to its choice. *See Teachers Ins. and Annuity Ass'n of America v. Butler,* 592 F.Supp. 1097, 1106 (S.D.N.Y. 1984). Further, the plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim, *see Levitt v. State of Maryland Deposit Ins. Fund Corp.,* 643 F.Supp. 1485, 1493 (E.D.N.Y.1986), or where the plaintiff is a resident of the forum district. *See, e.g., Orb Factory,* 6 F.Supp.2d at 210; *AMVEST Capital Corp. v. Banco Central, S.A.,* 628 F.Supp. 1258 (1986).

■ However, the emphasis placed by a court on this choice diminishes where "the operative facts upon which the litigation is brought bear little material connection to the chosen forum." *Nieves,* 700 F.Supp. at 772; *see Westwood Ventures,* 1997 WL 266970, at *2; *see also Eichenholtz v. Brennan,* 677 F.Supp. 198, 201 (S.D.N.Y.1988) (stating that "plaintiff's choice of forum is given less weight where, as here, the plaintiff is not a resident of the forum and the cause of action is minimally connected with the forum"); *Kolko,* 672 F.Supp. at 715 (noting that if the balance of several factors strongly favor defendant, plaintiff's choice may be disturbed).

In this case, because the facts giving rise to the case have little material connection to New York, many of the witnesses reside in Michigan, Defendants are located in Michigan, and virtually all the documents underlying the dispute are located in Michigan, the deference afforded Levine's choice of New York is minimized.

■ Moreover, in class actions less weight is given to the plaintiff's choice. *See* In re *Warrick,* 70 F.3d 736, 741 n. 7 (2d Cir.1995); *Eichenholtz,* 677 F.Supp. at 202 (class action under the federal securities laws); *Shulof v. Westinghouse Elec. Corp.,* 402 F.Supp. 1262, 1263 (S.D.N.Y.1975)

("While it is axiomatic that a plaintiff's choice of forum is entitled to great consideration, the adage has little weight in stockholder class actions...."). In *Eichenholtz*, the court observed that "[i]n a class action, the named plaintiff's choice of forum is afforded little weight because in such a case, there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim." *Eichenholtz*, 677 F.Supp. at 202 (*citing Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)).

Levine, however, urges that in the context of securities class actions a plaintiff's choice of forum should rarely be disturbed. Yet a court's discretion under § 1404(a) is not circumscribed by the jurisdictional provisions of the Exchange Act or the 1933 Act. Sections 78aa and 77v do not prohibit, by their own terms, a court from entertaining a motion to transfer under 1404(a) or from transferring an action to a more convenient forum. *See Collier*, 1990 WL 55798, at *4 (transferring securities class action and stating that plaintiff's choice of forum in a class action is given little weight). They also do not alter the standard employed in deciding whether transfer is appropriate.

■ As the Court of Appeals for the District of Columbia stated, § 1404(a) "applies to actions governed by special venue provisions, including the special venue provisions of the federal securities statutes." *Securities & Exchange Comm'n v. Savoy Indus.*, 587 F.2d 1149, 1153 (D.C.Cir.1978) (citations omitted). Furthermore, contrary to Levine's assertion, the four cases to which he cites do not stand for the proposition that in a case such as this the plaintiff's choice should not be disturbed. Rather, they require that a court balance the convenience and justice when faced with a motion to transfer and indicate that when these factors weigh heavily in favor of transfer, even in a securities class action, plaintiff's choice of forum may be disturbed.

*Glenayre* involved a securities fraud class action against a manufacturer and eleven individual defendants who sold significant amounts of Glenayre stock. The named plaintiffs, as well as five of the eleven individual defendants, resided in New York. *See Glenayre*, 982 F.Supp. at 300. The decision to deny transfer in that case turned on the court's view that the five New York-based *defendants* had a right to have the case litigated in New York. *See id.*

In *Residex Corp. v. Farrow*, 374 F.Supp. 715 (E.D.Pa.1974), the court denied a motion to transfer where only three of the fourteen defendants favored the transfer. Notably, the corporate defendant, the sale of whose securities were at issue, and the co-underwriters for the offering, opposed the transfer motion. Indeed, the court explained that even if it granted only "minimal consideration" to plaintiff's choice of forum, "such minimal consideration taken together with the results of balancing all the relevant factors ... militates that the actions remain in the district." *Id.* at 717.

In *Beres v. Thomson McKinnon Securities, Inc.*, the court did note that "courts have ... held that where an action is brought pursuant to the Securities and Exchange Act, whose venue provisions allow plaintiff an extremely wide choice of forums, 'the fact that plaintiff seeks to represent a widely dispersed class takes on less significance than might otherwise be the case.'" No. 85 Civ. 6674, 1987 WL 16977, at *4 (S.D.N.Y. Sept. 10, 1987) (quoting *Somerville v. Major Exploration, Inc.*, 576 F.Supp. 902, 908 (S.D.N.Y.1983)). Still, in that case, the court denied the transfer motion where the plaintiff and several defendants opposed the motion.

Finally, *Coleman v. Global Ultimacc Systems, Inc., STC*, No. 85 Civ. 8467, 1986 WL 5804 (S.D.N.Y. May 16, 1986), did not involve a class action and thus has no relevance to the question at hand. *See id.* at *2 (noting in a case where the five plaintiffs were located in the transferor forum that "[t]he deference given plaintiffs' choice of forum, while perhaps less weighty in shareholder derivative suits, has full force in securities action brought by *individual* plaintiffs" (emphasis added)).

In the instant case, even if Levine's choice of forum were entitled to substantial defer-

ence, the factors discussed above weigh sufficiently in favor of a transfer to override any such preference. A denial of transfer will not be premised solely on choice of forum. In isolation, given its nature as a class action brought under the federal securities law, this factor weighs moderately in favor of Levine.

### 8. Trial Efficiency and the Interests of Justice

Beyond these particular concerns, however, a district court has discretion to transfer an action to where the trial would best be expedient and just. See Red Bull Assoc. v. Best Western Int'l, Inc., 862 F.2d 963, 967 (2d Cir.1988). "The relevant docket conditions of the transferor and transferee courts[,] [for example,] are relevant" to the transfer determination. Eichenholtz, 677 F.Supp. at 202.

According to Defendants, the Southern District of New York's present docket is considered to be more congested than the docket in the Eastern District of Michigan. In support, Defendants represent that since in 1997 the median time for a civil case to go from filing to disposition in New York was nine months as opposed to seven months in Michigan, a transfer would increase the overall efficiency of the federal court system.

However, as Levine points out, the congestion averred to amounts to no more than two months. Judicial economy, although a relevant consideration, is insufficient on its own to support a transfer motion. See e.g., Warrick, 70 F.3d at 740; Butcher v. Gerber Prods. Co., No. 98 Civ. 1819, 1998 WL 437150, at *11 (S.D.N.Y. Aug. 3, 1998); Westwood Ventures, 1997 WL 266970, at *6; Eichenholtz, 677 F.Supp. at 202. Here, the relative congestion of the dockets for this district and the Eastern District of Michigan do not clearly call for either the transfer or retention of the action.

Levine asserts that because New York is the epicenter of securities actions, the judges in the Southern District of New York are experienced and accustomed to dealing with securities class action, this Court is already familiar with the facts, and Defendants have waited an "inordinately" long time to make the motion at bar, the interests of justice support retention of this case. That New York may be central in many securities actions does not negate the fact that Michigan is the locus of operative facts. Additionally, Defendants' delay in filing for transfer is not substantial. The Complaint, having been filed on May 8, 1998, the motion was filed August 26, 1998, about three and one-half months later. The interests of justice factor, as defined by Levine, is not sufficient to vitiate the findings concerning the convenience of the witnesses and parties, the locus of operative facts, and access to sources of proof.

The principal records are located, and the operative facts arose, in Michigan, and the proof required involves testimony from witnesses, the majority of whom reside in Michigan. In light of the foregoing analysis and consideration of the totality of circumstances, the balance of the factors tips in favor of Defendants.

### Conclusion

For the reasons set forth above, Defendants' motion to transfer this action to the Eastern District of Michigan is granted.

It is so ordered.