**WILSHIRE CREDIT CORPORATION,**
Plaintiff,

v.

**BARRETT CAPITAL MANAGEMENT CORPORATION, Barrett Capital Leasing Corporation, Barrett Capital Corporation, and Barry P. Korn, Defendants.**

No. 96–CV–129H.

United States District Court,
W.D. New York.

July 16, 1997.

Michael E. Ferdman, Hiscock & Barclay, LLP, Buffalo, NY, for Plaintiff.

Thomas F. Knab, Saperston & Day, P.C., Buffalo, NY, for Defendants.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct any and all further proceedings in this case, including the entry of final judgment, in accordance with 28 U.S.C. § 636(c). Defendants have moved to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure on the grounds that (1) the action is barred by the statute of limitations, and (2) plaintiff has chosen an improper venue. In the alternative, defendants move for an order transferring this case to the District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a) in the interests of justice and for the convenience of the parties and witnesses. For the reasons that follow, defendants' motions to dismiss are denied and defendants' motion to transfer venue is granted.

## BACKGROUND

On February 26, 1996, plaintiff commenced this action in the District Court for the Western District of New York. Plaintiff claims that this court has jurisdiction pursuant to 28 U.S.C. § 1331 based on diversity of citizenship. According to the complaint, plaintiff is an Oregon corporation with its principal place of business in Portland, Oregon. Defendants Barrett Capital Management Corporation (Barrett Management), Barrett Capital Leasing Corporation (Barrett Leasing), and Barrett Capital Corporation (Barrett Capital) are Delaware corporations, each with its principal place of business located in Mamaroneck, New York. Defendant Barry P. Korn resides in Westchester County, New York, and is or was the principal of Barrett Management, Barrett Leasing and Barrett Capital. Mamaroneck and Westchester County are located in the Southern District of New York.

Plaintiff is seeking the repayment of loans made to Barrett Leasing Corporation, which is now out of business. Plaintiff is asserting its claim against the other corporate defendants on the theory that they are alter egos of Barrett Leasing and of Barry P. Korn. The history of the loans at issue is as follows.

From April 30, 1986 through November 30, 1986, Barrett Leasing received a series of commercial loans from Empire Federal Savings Bank of America (Empire Bank) (Item 1, ¶¶ 28, 32, 35, 39, 42, 45 & 48; Item 7, Affidavit ¶ 9, Exs. A–G). The loans in dispute originated out of Empire Bank's White Plains office in the Southern District of New York (Id., Affidavit ¶¶ 12–13; Item 14, ¶ 6).

During the course of his relationship with Empire Bank, Barry P. Korn engaged in communications with Empire representatives in both White Plains and Buffalo regarding the notes (Item 7, ¶ 13; Item 14, ¶¶ 5–17). The last payment Barrett Leasing made to Empire Bank was remitted on or about December 21, 1989 (Item 7, ¶ 14).

In September 1990, the Department of Treasury appointed the Resolution Trust Corporation (RTC) as receiver of Empire Bank (Item 13, p. 3). The RTC succeeded to "all rights, titles, powers and privileges" of Empire Bank and assumed control of Empire's assets, including the notes at issue, pursuant to the provisions of the Financial Institutions Reform Recovery and Enforcement Act (FIRREA), 12 U.S.C. § 1821(d)(A) (Item 8, p. 1). Plaintiff claims that in 1994, it became the assignee of the RTC as to the notes from Barrett Leasing (Item 1, ¶¶ 2, 9). Plaintiff is now seeking the balance allegedly due on the notes, plus interest from January 1, 1990.

### DISCUSSION

### I. Motions to Dismiss or Transfer for Improper Venue.

#### A. Improper Venue –28 U.S.C. § 1391.

■ Defendants assert two alternative grounds in support of dismissal for improper venue. First, defendants contend that none of the defendants reside in the Western District of New York. In addition, defendants claim that none of the events giving rise to plaintiff's claim occurred in the Western District. The venue provision applicable to plaintiff's claims is 28 U.S.C. § 1391, which provides, in pertinent part, as follows:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred....

....

(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State....

28 U.S.C. § 1391(a), (c).

Plaintiff contends that Barrett Leasing, a corporate defendant, was subject to the personal jurisdiction of the Western District of New York when this matter was commenced and therefore "resides" in this district for purposes of 28 U.S.C. §§ 1391(a)(1) and (c). In addition, plaintiff maintains that a substantial part of the events giving rise to its claims occurred in this district, and that venue is proper under § 1391(a)(2) as well.

■ Since New York State has more than one federal judicial district, this action is properly brought in the Western District only if Barrett Leasing's contacts would be sufficient to subject it to personal jurisdiction if the Western District were a separate state. In assessing the sufficiency of a corporate defendant's "contacts" under 28 U.S.C. § 1391 in a diversity case, federal law, rather than New York law, applies. *Bicicletas Windsor v. Bicycle Corp. of America,* 783 F.Supp. 781 (S.D.N.Y.1992) (citing *PI, Inc. v. Valcour Imprinted Papers, Inc.,* 465 F.Supp. 1218, 1222 (S.D.N.Y.1979) ("[w]hat constitutes "doing business" for purposes of venue is governed by federal law, even though, in a diversity case, it is state law which determines whether a corporation is "doing business" in the state for purposes of jurisdiction." ) (citations omitted); *Sterling Television Presentations, Inc. v. Shintron Co.,* 454 F.Supp. 183, 189 (S.D.N.Y.1978)).

■ Since any state may exercise personal jurisdiction over a defendant to the extent that the defendant's contacts with the state are sufficient to comport with due process

requirements, it follows that a due process analysis should be employed in assessing a corporate defendant's contacts with one district in a multidistrict state. *Smehlik v. Athletes and Artists, Inc.*, 861 F.Supp. 1162, 1169–70 (W.D.N.Y.1994). This, in turn, implicates the "minimum contacts" test established by *International Shoe Company v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), which requires that a defendant's contacts with the forum be such that maintenance of the action does not offend traditional notions of fair play and substantial justice.

■ In other words, a defendant must have fair warning that a particular activity may subject him or her to the jurisdiction of a foreign forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1985). The fair warning requirement is satisfied if the defendant purposely directs activities at residents of that forum. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (citations omitted). This analysis ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). Thus, the Due Process Clause "allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World–Wide Volkswagen Corp., supra*, 444 U.S. at 297, 100 S.Ct. at 567.

Federal courts are divided on the issue of which party carries the burden of proof on a motion to dismiss for improper venue. Some conclude that venue involves a privilege that is personal to the defendant and that an objection to venue is properly treated as an affirmative defense. Under this analysis, the defendant has the burden of establishing that venue is improper. Other courts have placed the burden on the plaintiff, reasoning that it is plaintiff's obligation to institute the action in a permissible forum. See James Wm. Moore et al., Moore's Federal Practice ¶ 110.01[5][d] (3d ed.1997); Wright & Miller, Federal Practice and Procedure; Civil 2d § 1352. This distinction seems somewhat futile, however, given that a motion to dismiss may be granted either where the plaintiff fails to make a *prima facie* showing that venue is proper or where the defendant demonstrates a defect in venue.

In the present action, plaintiff asserts that Empire Bank made a total of eleven loans to Barrett Leasing, and that notes 5 through 11 are currently in dispute. Plaintiff has submitted the affidavit of Ernest A. Curto, who was employed at Empire Bank's corporate offices in Buffalo from 1985 through 1990, to support its claim that venue is proper in the Western District of New York (Item 14). The affidavit and supporting exhibits indicate that Ernest Curto of Empire's Buffalo office and Paul Cambreleng of the White Plains office met with Mr. Korn on February 13, 1986 regarding problems with Barrett Leasing's notes 2 through 4 (Item 14, Exs. B & C). As a result of that meeting and subsequent discussions, Empire agreed to consolidate those notes into note 5. (Id., Exs. C & D). Subsequently, defendant's accountants received information regarding notes 5 through 9 from Empire's Buffalo office (Id., Ex. A). In addition, Barry Korn communicated with Empire's Buffalo office regarding reconciliation of Barrett Leasing's loan balances, submission of financial statements, and loan collateral (Id., Exs. G & J; Item 7, Exs. J & K).

Defendants submit the affidavit of Barry Korn to support their argument that venue in the Western District is improper. Mr. Korn states that he dealt with Empire Bank's White Plains office in the negotiation, execution, and performance of these notes (Item 7, ¶ 12). Indeed, the loan documents were signed by an Empire Bank Vice President at the White Plains office, the address of Empire's White Plains office is the bank's only address that appears on the face of the loan documents, and payments were made to the White Plains office (though they were later transmitted to Buffalo) (Id., Exs.A–H). In addition, Mr. Korn states that the "vast majority of the communications between Empire and [Barrett Leasing] were [with] Em-

pire representatives Cambreleng and Morch doing business in its White Plains office" (Id., ¶ 12). Mr. Korn also submitted a further affidavit in which he stated that his communications with Empire representatives in Buffalo were "limited by comparison," and that while he occasionally communicated with Mr. Curto, the "bulk of those communications took place after the White Plains office closed" (Item 18, ¶ 12).

While defendants' affidavits and exhibits demonstrate that Barrett Leasing's interaction with the White Plains office was substantial, there is nothing that directly contradicts Ernest Curto's assertion that he was involved in the negotiations that resulted in the issuance of the subject notes and in the subsequent workout aspects of these loans.

This determination is admittedly a close call. However, I find that the affidavits and exhibits presented to the court show that Barrett Leasing was aware that it had entered into, and that it did maintain, a banking relationship with a financial institution based in Buffalo. Therefore, I do not view Barrett Leasing's relationship to Empire's corporate offices in Buffalo as "random," "fortuitous," or "attenuated." Accordingly, venue is proper in the Western District of New York pursuant to 28 U.S.C. §§ 1391(a)(1) and (c).

While it is therefore unnecessary to consider plaintiff's alternative argument that venue is also proper under § 1391(a)(2), there remains the issue of whether this case should be transferred to the Southern District of New York for the convenience of the parties and witnesses and in the interest of justice.

### B. Change of Venue—28 U.S.C. § 1404.

■ Section 1404(a) provides that:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

This section is a statutory recognition of the common law doctrine of *forum non conveniens as* a facet of venue in the federal courts. 1A James W. Moore et al., *Moore's*

*Federal Practice,* ¶ 0.345[3.–1]. The goal of § 1404(a) is to prevent waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 27, 80 S.Ct. 1470, 1475, 4 L.Ed.2d 1540 (1960), *quoted in Lencco Racing Co., Inc. v. Arctco, Inc.,* 953 F.Supp. 69, 71 (W.D.N.Y.1997).

■ The district court has broad discretion on a transfer motion according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964); *see also Red Bull Associates v. Best Western International, Inc.,* 862 F.2d 963, 967 (2d Cir.1988). The moving party bears the burden of "making out a strong case for a transfer," *Filmline (Cross–Country) Productions v. United Artists,* 865 F.2d 513, 521 (2d Cir.1989), by demonstrating that, under all of the circumstances, the interests of justice and of the parties will be better served by the transfer. *Delaware Credit Corp. v. Aronoff,* 1992 WL 170896, *4 (W.D.N.Y. July 10, 1992)(Skretny, J.); *Austin v. International Brotherhood of Teamsters–Airline Div. 2747,* 739 F.Supp. 206, 208 (S.D.N.Y.1990); *Nieves v. American Airlines,* 700 F.Supp. 769, 772 (S.D.N.Y. 1988). However, this burden is less stringent than under the former doctrine of *forum non conveniens* since transfer under § 1404(a) does not result in dismissal. *Delaware Credit Corp., supra; Moore's, supra* at ¶ 0.345[5].

■ The inquiry on a motion to transfer is two-fold. The court must first determine whether the action sought to be transferred is one that "might have been brought" in the transferee court. Second, the court must determine whether, considering "the convenience of parties and witnesses" and "the interest of justice," a transfer is appropriate. *Lencco Racing, supra,* 953 F.Supp. at 71; *see also United States Fidelity & Guar. Co. v. Republic Drug Co.,* 800 F.Supp. 1076, 1079 (E.D.N.Y.1992); *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 986 (E.D.N.Y.1991). Here, it is clear from the express language of 28 U.S.C. § 1391(a) that this action could have been brought in the Southern District

of New York, and plaintiff does not argue otherwise. Therefore, it is only the second inquiry that requires examination.

In determining whether transfer is warranted "for the convenience of the parties and witnesses [and] in the interest of justice," courts generally consider several factors including the convenience of the witnesses, the location of relevant documents and the relative ease of access to sources of proof, the convenience of the parties, the locus of the operative facts, the availability of process to compel the attendance of unwilling witnesses, the relative means of the parties, the forum's familiarity with the governing law, the weight accorded the plaintiff's choice of forum, and trial efficiency and the interest of justice, based on the totality of the circumstances. *Constitution Reinsurance Corp. v. Stonewall Ins. Co.*, 872 F.Supp. 1247, 1250 (S.D.N.Y.1995); *Cento Group, S.p.A. v. OroAmerica, Inc.*, 822 F.Supp. 1058, 1060 (S.D.N.Y.1993). The court now turns to an application of these factors to this case, as presented in the pleadings.

### 1. Convenience of Witnesses

Plaintiff names seven nonparty witnesses that it intends to call at trial, all of whom were formerly employed in the Buffalo office of Empire Bank. Plaintiff believes that these witnesses still reside in the Western District of New York. Barry Korn, a party and defendants' primary witness, resides in the Southern District. While defendants do not state the total number of nonparty witnesses they intend to call, they suggest that they will call the former loan officers from Empire's White Plains office. Based on the affidavits and documents submitted, this would appear to mean Mr. Cambreleng and Mr. Morch.

The information provided by the parties on this issue is somewhat equivocal in that, even where potential nonparty witnesses are identified by name, their current residence is not established. However, plaintiff appears to have the greater number of witnesses who will testify regarding the notes at issue. Accordingly, I find that this factor does not favor transfer.

### 2. Location of Documents and Ease of Access to Sources of Proof.

Two distinct issues are raised in plaintiff's complaint. The first involves the parties' dispute as to the amount allegedly owed on notes 5 through 11. The loan documents and Barrett Leasing's business records that are relevant to this issue are located in both the Western District of New York at the offices of plaintiff's attorney, and in the Southern District where the defendants conduct business. These records can easily be exchanged and transported to either district.

A review of the loans at issue reveals that the notes were made by Barrett Leasing, without recourse to any other person or entity. Barrett Leasing is now out of business. Thus, the second issue involves plaintiff's argument that liability can be imposed on the other defendants on the ground that they are "alter egos" of Barrett Leasing. Plaintiff has not made any showing that sources of proof on this issue are located in the Western District. In fact, it is reasonable to assume that any evidence regarding plaintiff's "alter ego" claim is uniquely situated in the Southern District where the defendants all reside and do business. Accordingly, I find that this factor weighs in favor of transfer.

### 3. Convenience of the Parties.

Defendants argue that they will be inconvenienced if forced to litigate this case in the Western District. Plaintiff is an Oregon corporation that will be no more inconvenienced by appearing in the Southern District of New York as the Western District. Plaintiff concedes that this factor favors transfer.

### 4. Locus of the Operative Facts.

The loan agreements and notes were executed in the Southern District and Barrett Leasing's payments were remitted there as well. In addition, the Southern District is the locus of any operative facts regarding plaintiff's "alter-ego" claim. Accordingly, I find that the locus of operative facts favors transfer to the Southern District of New York.

### 5. Availability of Process to Compel Attendance of Unwilling Witnesses.

 Based on the affidavits and statements submitted, the parties believe that all potential nonparty witnesses reside in New York State. Both the Western and Southern Districts have co-extensive subpoena powers within New York. Defendants argue that the Southern District should be favored because that court has the ability to reach into New Jersey and Connecticut to subpoena witnesses. However, defendants do not identify any potential witnesses residing outside of New York State. Accordingly, this factor does not favor either district.

### 6. Relative Means of the Parties.

Neither party has provided information necessary to assess the weight of this factor.

### 7. Forum's Familiarity with Governing Law.

 This court must assume that the federal courts in both this district and in the Southern District of New York are equally familiar with the legal principles necessary to resolve this issue, as well as the substantive issues of New York law. Accordingly, this factor does not favor either party.

### 8. Weight Accorded Plaintiff's Choice of Forum.

 Generally, the plaintiff's choice of forum is entitled to considerable weight, and should not be disturbed unless the balance of the several factors is strongly in favor of the defendant. *Kolko v. Holiday Inns, Inc.*, 672 F.Supp. 713, 715 (S.D.N.Y.1987). Where the factors are equally balanced, the plaintiff is entitled to its choice of forum. *Teachers Insurance & Annuity Association of America v. Butler*, 592 F.Supp. 1097, 1106 (S.D.N.Y.1984). Further, the plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the events allegedly underlying the claim, *Levitt v. State of Maryland Deposit Insurance Fund Corp.*, 643 F.Supp. 1485, 1493 (E.D.N.Y.1986), or where the plaintiff is a resident of the forum district. *See, e.g., AMVEST Capital Corp. v. Banco Central, S.A.*, 628 F.Supp. 1258 (S.D.N.Y.1986). Where transfer would merely shift the inconvenience from one party to the other, "the plaintiff's choice of forum should not be disturbed." *De Luxe Game Corp. v. Wonder Products Co.*, 166 F.Supp. 56, 61 (S.D.N.Y. 1958).

I find that plaintiff's choice of forum is not entitled to substantial deference. As the preceding analysis demonstrates, the primary locus of the relevant events and documents is in Westchester County, in the Southern District of New York. With the exception of the "convenience of witnesses," the remaining factors are either neutral or weigh in favor of transfer. Further, plaintiff does not reside in the Western District.

### 9. Trial Efficiency.

Neither party has provided information regarding this factor. However, this court notes that the case load of this district appears to be somewhat higher than that of the Southern District. For example, in 1996, each judge in the Western District had 630 pending cases and the average time from the filing of a civil action to trial was 35 months. Each judge in the Southern District had 503 pending cases, with civil actions taking 24 months from filing to trial. *1996 Federal Court Management Statistics.*

 Accordingly, in light of the foregoing analysis and considering the totality of the circumstances, I find that the interests of justice require transfer of this action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## II. Dismissal Based on Statute of Limitations.

 Defendants claim that a six-year statute of limitations applies to plaintiff's claims under New York law. N.Y. Civ. Prac. L. & R. 213(2). They contend that the limitations period began to run no later than the date of Barrett Leasing's last payment, and that plaintiff's suit, initiated in February 1996, is untimely. In response, plaintiff claims that as the RTC's assignee, it is entitled to the benefit of the statute of limitations

available to the RTC pursuant to 12 U.S.C. § 1821(d)(14)(A) and (B).

This case having been transferred to the Southern District of New York, it is appropriate for the Court in that district to decide the question of dismissal based on the statute of limitations. See *Lencco Racing, supra,* 953 F.Supp. at 73–74; *S.C. Johnson & Son, Inc. v. Gillette Co.,* 571 F.Supp. 1185, 1188 (N.D.Ill.1983) (After granting motion to transfer, court denied motion for preliminary injunction, leaving the matter to the transferee court).

Therefore, defendants' motion to dismiss on the ground that the action is barred by the statute of limitations is denied without prejudice, with leave to renew in the Southern District of New York.

### CONCLUSION

For the foregoing reasons, defendants' motion (Item 7) to dismiss for improper venue is DENIED, defendants' motion to transfer venue to the Southern District of New York is GRANTED, and defendants' motion to dismiss on the ground that the action is barred by the statute of limitations is DENIED without prejudice, with leave to renew in the Southern District of New York.

**SO ORDERED.**