**INVIVO RESEARCH, INC., Plaintiff,**

v.

**MAGNETIC RESONANCE EQUIPMENT CORPORATION and Medrad, Inc., Defendants.**

**No. 99 Civ. 11863 (RWS).**

United States District Court,
S.D. New York.

Nov. 6, 2000.

Hopgood, Calimafde, Judlowe & Mondolino, New York City (John M. Calimafde, David Garrod, of Counsel), for Plaintiff.

Reed Smith Shaw & McClay, New York City (Scott S. McKessy, of Counsel), for Defendant Medrad, Inc.

## OPINION

SWEET, District Judge.

The defendants Magnetic Resonance Equipment Corporation ("MRE") and Medrad, Inc. ("Medrad") have moved pursuant to 28 U.S.C. § 1404(a) for an order transferring this patent infringement action to the Western District of Pennsylva-

nia where a declaratory judgment action raising identical issues is pending. Plaintiff Invivo Research, Inc. ("Invivo") opposes the motion. For the reasons set forth below, the motion is granted.

### The Parties

Invivo is a corporation organized and existing under the laws of Oklahoma with its principal place of business in Orlando, Florida.

MRE is a corporation organized and existing under the laws of Delaware with its principle place of business in Bay Shore, New York.

Medrad is a corporation organized and existing under the laws of Delaware with its principle place of business in Indianola, Pennsylvania.

### Facts And Prior Proceedings

Invivo initiated the instant action by the filing of a complaint on December 8, 1999. Invivo is the holder of U.S. Patent No. 4,991,580 (the '580 Patent), and the complaint alleges patent infringement by MRE. The complaint does not specify which of MRE's products it accuses of infringement, but mentions two products by name, the MRE Foxbox[1] and MRE 9500 Monitoring System (the "accused products"). Invivo served the complaint on MRE on April 25, 2000.[2]

MRE's principal place of business is in Bayshore, New York, which is in the Eastern District of New York. MRE does not have a place of business within the Southern District of New York. MRE developed and previously sold the products accused of infringement in this action. The primary developer of the accused products was G. Ronald Morris, Sr. ("Morris"), assisted by Jim Valentine ("Valentine") and Doug Tomalson ("Tomalson"). Valentine currently resides in the State of Washing-

ton. Tomalson currently resides in Wisconsin.

The accused products were sold nationally to hospitals and doctors in all major U.S. markets, including hospitals located in the Western District of Pennsylvania. Customers within the Southern District of New York accounted for no more than one percent of the total sales of the accused products.

On April 21, 2000, MRE sold certain of its assets, including the products allegedly infringing the '580 Patent, to Medrad as part of an Asset Purchase Agreement. Under the agreement, MRE agreed to manufacture the accused products for Medrad during a short transition period, which ended on or about August 31, 2000. At that time, MRE became a company devoted solely to research activities with no on-going connection to the manufacture, marketing, or sale of the accused products.

Medrad's principal place of business in Indianola, Pennsylvania, which is in the Western District of Pennsylvania. Medrad is in the process of relocating all manufacturing activities and documentation relating to the assets of the business which it purchased from MRE to Indianola, Pennsylvania. The relocation was expected to be complete on or by August 31, 2000. Medrad does not have a place of business anywhere in the State of New York.

On April 21, 2000, upon acquiring the aforementioned assets of MRE, Medrad filed a declaratory judgment action in the Western District of Pennsylvania against Invivo seeking a declaration of non-infringement. Invivo filed an answer on May 31, 2000, and an amended answer on June 16, 2000. That action, *Medrad, Inc. v. Invivo Research, Inc.*, No. 00 Civ. 778, was stayed by order of the Honorable

---

1. Presumed to be the MRE FOX tm Module Model.

2. Invivo failed to serve MRA within 120 days of filing the complaint, i.e., by April 6, 2000.

However, by order dated June 21, 2000, this Court granted Invivo an extension of time to serve MRE *nunc pro tunc* through and including April 25, 2000.

Donalta W. Ambrose on October 5, 2000, and marked "administratively closed."

On June 27, 2000, Invivo filed an amended complaint adding Medrad as a defendant in this action. Medrad answered on August 14, 2000.

Medrad and MRE filed motions to transfer this action to the Western District of Pennsylvania on July 21, 2000 and July 24, 2000, respectively, and submissions were received through August 16, 2000, at which time the matter was deemed fully submitted.

## Discussion

### I. *The Standard Under Rule 1404(a)*

Section 1404(a) of Title 28 of the United States Code provides in relevant part that:

for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

■ This section is a statutory recognition of the common law doctrine of *forum non conveniens* as a facet of venue in the federal courts. *See Wilshire Credit Corp. v. Barrett Capital Management Corp.,* 976 F.Supp. 174, 180 (W.D.N.Y.1997). Section 1404(a) strives to prevent waste " 'of time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " *Wilshire,* 976 F.Supp. at 180 (*quoting Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)).

■ " '[M]otions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis.' " *Linzer v. EMI Blackwood Music Inc.,* 904 F.Supp. 207, 216 (S.D.N.Y.1995) (*quoting In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir.1992)) (*citing Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). The burden of demonstrating the desirability of transfer lies with the moving party. *See, e.g., Hubbell Inc. v. Pass & Seymour, Inc.,* 883 F.Supp. 955, 962 (S.D.N.Y.1995).

Thus, the inquiry on a motion to transfer is two-fold. The court must first determine whether the action sought to be transferred is one that "might have been brought" in the transferee court. Second, the court must determine whether, considering the "convenience of parties and witnesses" and the "interest of justice," a transfer is appropriate. *Wilshire,* 976 F.Supp. at 180.

■ In determining whether transfer is warranted "for the convenience of the parties and witnesses [and] in the interest of justice," courts generally consider several factors, including: (1) the convenience of witnesses, (2) the convenience of the parties, (3) the locus of operative facts, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and the relative ease of access to sources of proof, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances. *See Orb Factory, Ltd. v. Design Science Toys, Ltd.,* 6 F.Supp.2d 203 (S.D.N.Y.1998) (*citing Wilshire,* 976 F.Supp. at 181); *see also Constitution Reinsurance Corp. v. Stonewall Ins. Co.,* 872 F.Supp. 1247, 1250 (S.D.N.Y. 1995); *Cento Group, S.p.A v. OroAmerica, Inc.,* 822 F.Supp. 1058, 1060 (S.D.N.Y. 1993).

### II. *This Action Will Be Transferred*

### A. *This Case Could Have Been Brought In The Western District Of Pennsylvania*

■ An action "could have been brought" in another forum if the defendant would have been amenable to personal jurisdiction in the transferee forum at the

time the action was commenced and venue is proper there. See Hoffman v. Blaski, 363 U.S. 335, 344, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); Bionx Implants, Inc. v. Biomet, Inc., No. 99 Civ. 740, 1999 WL 342306, at *2 (S.D.N.Y. May 27, 1999).

Invivo could have filed the initial complaint in this action against MRE in the Western District of Pennsylvania. Venue was proper in the Western District of Pennsylvania under 28 U.S.C. § 1400(b), which provides that:

> [a]ny action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

28 U.S.C. § 1400(b).

Being a corporation, MRE "resides" in those districts in which it is subject to personal jurisdiction at the time the action is commenced. See 28 U.S.C. § 1391(c). The Western District of Pennsylvania has personal jurisdiction over MRE as a result of the business conducted by MRE within the district. The accused products have been sold to hospitals in the Western Pennsylvania. Thus, both venue and personal jurisdiction were proper as to MRE in the Western District of Pennsylvania. Personal jurisdiction and venue were also proper as to Medrad, since Medrad resides in that district.

## B. *The Balancing Of The Interests Favors Transfer*

### 1. *The Convenience Of The Parties And Witnesses*

"The convenience of party and non-party witnesses is perhaps the most important consideration of a Section 1404(a) motion." *Garrel v. NYLCare Health Plans, Inc.*, No. 98 Civ. 9077, 1999 WL 459925, at *5 (S.D.N.Y. June 29, 1999) (citations omitted); *see, e.g., Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F.Supp. 955, 962 (S.D.N.Y.1995).

The Medrad employee witnesses are all located within the Western District of Pennsylvania. Since Medrad is now the only seller and soon will be the only manufacturer of the accused products, its employees will most likely comprise the bulk of defense witnesses. Venue in their home district is without question more convenient for these party witnesses.

Invivo's principal place of business is in Orlando, Florida. Invivo's witnesses are alleged without contradiction to reside in and around Florida. Invivo has demonstrated its willingness to travel as far as New York City by filing this action here. Pittsburgh and New York City, the respective seats of the Western District of Pennsylvania and the Southern District of New York, are approximately equidistant from Florida. Thus, transfer from this district to the Western District of Pennsylvania should have no impact upon the convenience of the Invivo witnesses.

Invivo's patent attorneys, who prosecuted the '580 patent and who are likely to be witnesses in this case, Head, Johnson and Kachigan, have offices only in Oklahoma and Arkansas. Transfer from New York to Pennsylvania will not increase any inconvenience for these witnesses and may be more convenient given the distances involved.

The portion of the MRE business relating to the accused products was sold to Medrad, and all manufacturing operations and documentation have been transferred to Western Pennsylvania. MRE is now a research-only company with a principal place of business on Long Island, New York. The defendants acknowledge that some MRE employees may have knowledge relevant to this action. However, although the Southern District of New York may be a more convenient forum for certain MRE employee witnesses located on Long Island, New York, MRE has joined in this motion to transfer this action to the Western District of Pennsylvania. As a result, any argument that this forum

is more convenient for MRE is not persuasive.

Of course, a transfer of venue should not merely shift the burden of inconvenience from one party to the other. *See, e.g., Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F.Supp. 1314, 1322 (S.D.N.Y.1989) (citation omitted). In this case, the burden of inconvenience would not simply shift as a result of a transfer. Invivo's burden would remain the same. MRE does not consider it inconvenient to defend a suit in the proposed new forum. Medrad's burden would be lessened. The only inconvenienced persons would be Invivo's trial counsel, Hopgood, Calimafde, Kalil & Judlowe, whose place of business is in Manhattan, New York. However, the convenience of counsel is not an appropriate factor to consider on a motion to transfer. *See Matra Et Manurhin v. International Armament Co.,* 628 F.Supp. 1532, 1535 n. 5 (S.D.N.Y.1986); *Cento Group, S.p.A., v. OroAmerica, Inc.,* 822 F.Supp. 1058, 1060–61 (S.D.N.Y.1993).

Therefore, on balance the Western District of Pennsylvania is more convenient to the parties and the witnesses than the Southern District of New York, militating in favor of transfer to the Pennsylvania forum.

### 2. *Availability Of Compulsory Process*

Although MRE has undertaken to make available in the Western District of Pennsylvania any employee witnesses who would have been subject to the subpoena power of this court, these witnesses are subject to compulsory process in either forum by virtue of their employment relationship with a party. *See, e.g., Carruthers v. Amtrak,* No. 95 Civ. 0369, 1995 WL 378544, at *3 (S.D.N.Y. June 26, 1995) (citation omitted). However, MRE has also provided a declaration by Morris, the primary developer of the accused products, in which he promises to make himself available in the Western District of Pennsylvania whether or not he is an employee

of MRE subsequent to a transfer of this action. The other co-developers of the accused products, Valentine and Tomalson, live in Washington and Wisconsin respectively, and are not subject to the subpoena power of either court. Therefore, the availability of compulsory process is a neutral factor in the 1404(a) analysis.

### 3. *Access To Sources Of Proof*

The Western District of Pennsylvania offers much easier access to the documents and other tangible items that are likely to be used as evidence in this case. Presently, all of the documents relating to the accused products are located within the confines of the Western District of Pennsylvania at Medrad's headquarters in Indianola, Pennsylvania. This collection of documents includes all documents related to the previous manufacture and sale of the accused products. It also includes all documents generated by Medrad with respect to the products on a going forward basis. After the acquisition activities are complete, all of the tangible manufacturing equipment and items will be located in Indianola, Pennsylvania as well. Thus, this factor favors transfer.

### 4. *Plaintiff's Choice Of Forum*

The plaintiff's choice of forum, while customarily a very significant factor in a 1404(a) analysis, is not entitled to the weight it is generally accorded when the forum chosen has no material connection with the action. *See, e.g., ZPC 2000, Inc. v. SCA Group, Inc.,* 86 F.Supp.2d 274, 280 (S.D.N.Y.2000); *Pyramyd Stone Int'lern. Corp. v. Crosman Corp.,* No. 95 Civ. 6665, 1997 WL 66778, at *17 (S.D.N.Y. Feb.18, 1997). This is particularly the case where, as here, the plaintiff has chosen a foreign forum. *See ZPC 2000,* 86 F.Supp.2d at 280; *Coker v. Bank of America,* 984 F.Supp. 757, 766 (S.D.N.Y.1997).

The sole connection between this action and the Southern District of New York is the sale of a minute percentage of the

accused products and the location of plaintiff's counsel. There is "such a tenuous connection between the plaintiff's claims and the Southern District of New York, [that] the plaintiff's selection of this forum has an artificial quality that entitles a court to give it less weight." *See Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 11 F.Supp.2d 729, 730 (S.D.N.Y.1998) (transferring patent infringement case out of Southern District of New York where only connection to forum was incorporation of the defendant and sales of 112 out of 3,000 of accused products) (citation omitted). In addition, this is a foreign forum, as Invivo's home forum is located in Florida. Under these circumstances, the plaintiff's choice of forum does not militate against transfer.

### 5. *Familiarity With The Applicable Law*

Federal law governs the dispute between the parties in this case because it relates to allegations of patent infringement. "Since patent law is federal law, any district court may handle a patent case with equal skill." *Recoton Corp. v. Allsop, Inc.*, 999 F.Supp. 574, 578 (S.D.N.Y.1998); *see Bionx Implants*, 1999 WL 342306, at *5. Accordingly, this factor is neutral in the 1404(a) analysis.

### 6. *Trial Efficiency*

Invivo has cited a chart showing the time intervals from filing to jury trial of civil cases by district during the twelve-month period ended September 30, 1998, which reports a median time of 21 months for the Southern District of New York and 26 months for the Western District of Pennsylvania. However, for the year ending September 1999, the Southern District of New York had a median time to jury trial of 26 months while the Western District of Pennsylvania had a median time to jury trial of 27 months. Thus, the time it takes for a civil case to progress to trial is essentially equivalent between the two districts.

In addition, the number of cases pending in the Western District of Pennsylvania increased by 0.4% in 1999 while the number of cases pending in the Southern District of New York increased by 31.4%. Consequently, the relative level of congestion between the two districts means this case may be placed on a trial docket sooner if is transferred to the Western District of Pennsylvania. Thus, to the extent this factor weighs in favor of either form, it favors transfer.

Another factor bearing consideration is the relative progress of the case in the original forum. Here, the case is in its infancy. Invivo served an amended complaint on MRE on or about June 30, 2000, and on Medrad on or about July 7, 2000. MRE's answer was filed on July 17, 2000. There has been no discovery. No pretrial scheduling order has been set. There have been no mediation efforts. In sum, there has not yet been a significant investment by the Southern District of New York in this case in terms of either time or work. Thus, transferring the case to the Western District of Pennsylvania at this juncture would not cause any loss of time or effort, or any administrative delays.

### 7. *Locus Of Operative Facts*

Operative facts in a patent infringement action include facts relating to the design, development, and production of a patented product. *See Bionx Implants*, 1999 WL 342306, at *4. Invivo has not alleged that these activities occurred in the Southern District of New York. Morris, the primary developer of the accused products, presumably carried out this work at MRE's place of business on Long Island, New York, which is in the Eastern District of New York. The other developers reside in Washington and Wisconsin, respectively. The Southern District of New York's only relation to this action is the sale of no more than one percent of the accused products. The Western District of Pennsylvania shares this interest. "Where a party's products are sold in many states,

sales alone are insufficient to establish a material connection to the forum and to override other factors favoring transfer." *Bionx Implants,* 1999 WL 342306, at *4 (citations omitted). In addition, production of the accused products by MRE was to have ceased by August 31, 2000, with that activity being taken over by Medrad in the Western District of Pennsylvania. Therefore, this factor weighs in favor of transfer.

### C. The First Filed Rule Will Not Be Applied

■ It is a "well-settled principle" in this circuit that where proceedings involving the same parties and issues are pending simultaneously in different federal courts the first-filed of the two takes priority absent "special circumstances" or a balance of convenience in favor of the second forum. *See First City Nat. Bank and Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989); *see also William Gluckin & Co. v. Int'l Playtex Corp.,* 407 F.2d 177, 178 (2d Cir.1969). In other words, the presumption is that "the court which first has possession of the action decides it." *800– Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 131 (S.D.N.Y.1994); *see Simmons,* 878 F.2d at 80. The "first-filed rule" is based on principles of judicial economy and comity, that is, to avoid the inefficiency and wastefulness of allowing duplicative litigation to proceed in two different fora. *See Simmons,* 878 F.2d at 79; *National Equip. Rental, Ltd. v. Fowler Poultry & Egg Co.,* 287 F.2d 43, 46 n. 1 (2d Cir.1961).

■ However, "[t]he court must still determine whether the balance of convenience or special circumstances militate against giving precedence to the first-filed [ ] action, since a court need not proceed by mechanical reference to filing dates." *GT Plus, Ltd. v. Ja–Ru, Inc.,* 41 F.Supp.2d 421, 424 (S.D.N.Y.1998); *see also Gibbs & Hill, Inc. v. Harbert Intern., Inc.,* 745 F.Supp. 993, 996 (S.D.N.Y.1990). Weighing the balance of conveniences in the con-

text of a first-filed rule analysis requires consideration of the same factors that apply to the decision of whether transfer is appropriate under 28 U.S.C. § 1404(a). *See, e.g., 800–Flowers, Inc.,* 860 F.Supp. at 133; *S–Fer Intern., Inc. v. Paladion Partners, Ltd.,* 906 F.Supp. 211, 216 (S.D.N.Y. 1995). Thus, "the first-filed doctrine does not supersede the inquiry into the balance of convenience required under § 1404." *Recoton Corp.,* 999 F.Supp. at 576 *(internal citation and quotation marks omitted).*

Certainly, questions of judicial economy are present here. In the Pennsylvania case, which is the later-filed action, Medrad seeks a declaratory judgment of noninfringement concerning the '580 patent. Thus, the Pennsylvania action involves the same patent, accused products, and issues as does this action. It would be a waste of judicial resources to allow both suits to progress in parallel.

■ It is the court in which the first-filed action was brought that should decide whether an exception to the first-filed rule applies. *See, e.g., National Equip.,* 287 F.2d at 45; *Ontel Products, Inc. v. Project Strategies Corp.,* 899 F.Supp. 1144, 1150 n. 9 (S.D.N.Y.1995); *Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County,* 542 F.Supp. 1317, 1320 (S.D.N.Y.1982). Here, of course, the Pennsylvania court has stayed that action on the assumption, based on its record at the time, that the instant action would be tried here. The stay was appropriately entered to prevent duplicative litigation.

However, as explained above, the balance of the conveniences weighs in favor of transferring this action to the Western District of Pennsylvania. On that basis alone, this action does not take priority under the first-filed rule.

■ Moreover, given the lack of connection between the instant action and this forum, there is a hint of forum shopping involved in Invivo's choice of this forum. *See Riviera Trading Corp. v. Oakley, Inc.,* 944 F.Supp. 1150, 1158 (S.D.N.Y.1996)

("Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice.") (internal citation and quotation marks omitted). Forum shopping is a "special circumstance" which warrants an exception to the first-filed rule. *See id.*

A lack of progress in either litigation may also warrant an exception to the first-filed rule. *See In Matter of Arbitration Between Griffin Industries, Inc.,* 58 F.Supp.2d 212, 218 (S.D.N.Y.1999) (citations omitted); *Riviera Trading,* 944 F.Supp. at 1158 (citations omitted). Typically, the first-filed case will have progressed further than the later-filed one, which is a policy consideration weighing in favor of applying the first-filed rule. However, in this case the original complaint was filed in December 1999, but was not effectively served on MRE until April 25, 2000. Invivo amended its complaint on June 27, 2000 to add Medrad as a party. Medrad answered on August 14, 2000. There has been no discovery and no hearings or conferences of any kind in this matter. In fact, the progress of this case is essentially the same as the progress of its sister action in the Western District of Pennsylvania. There, Invivo's answer to Medrad's complaint was filed on May 31, 2000 and amended on June 16, 2000, well before Medrad answered the complaint in the instant action. Thus, the public policy of conserving judicial resources does not support application of the first-filed rule to this case. Rather, judicial economy would be better served by allowing the more convenient forum of the Western District of Pennsylvania to oversee the litigation of both actions.

### Conclusion

Therefore, for the reasons set forth above, the motion to transfer is granted.

It is so ordered.