**Jeffrey BOEHNER, Tom Fok, and Springland Trading, Inc., Plaintiffs,**

v.

**Lyn HEISE, Joan Eckes, and Ginseng Board of Wisconsin, Defendants.**

No. 03 Civ. 5453(DAB).

United States District Court, S.D. New York.

Jan. 20, 2006.

David John Hoffman, Po W. Yuen, New York City, for plaintiffs.

## MEMORANDUM & ORDER

BATTS, District Judge.

Plaintiffs Jeffrey Boehner ("Boehner"), Tom Fok ("Fok"), and Springland Trading, Inc., commenced this action against Defendants Lyn Heise ("Heise"), Joan Eckes ("Eckes"), and Ginseng Board of Wisconsin, alleging that Defendants Heise and Eckes, on behalf of Defendant Ginseng Board of Wisconsin ("the Ginseng Board"),

issued a defamatory and libelous letter about Plaintiffs' business for the purpose of interfering with business relations and in breach of contract, license and warranties. Defendants move to dismiss the Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, lack of venue, and improper service of Defendants Heise and Eckes, pursuant to Rules 12(b)(1), (2), (3), and (5) of the Federal Rules of Civil Procedure, or in the alternative, to transfer this case to the Western District of Wisconsin pursuant to 28 U.S.C.A. § 1406(a) on principles of forum non conveniens. For the following reasons, Defendants' motion to dismiss the Complaint is DENIED on all grounds; and Defendants' motion to transfer venue is DENIED.

## I. BACKGROUND [1]

Plaintiff Boehner, a citizen and resident of New Jersey, and Plaintiff Fok, a citizen and resident of New York, are owners and employees of Plaintiff Springland Trading, Inc., a corporation organized and existing under the laws of the State of New York, with a principal place of business in New York. (Complaint ¶¶ 1–3.) Springland Trading, Inc. is a wholesaler and retailer of both Asian ginseng and Wisconsin ginseng, and other medicinal herbs and roots. (Complaint ¶¶ 4, 11; Boehner Aff. ¶ 2.) Plaintiffs are fee-paying members of the Wisconsin Ginseng Growers Association ("the Association"), an organization of ginseng growers, wholesalers, and retailers.

---

**1.** The facts recounted here are taken from the Complaint as well as from the affidavits submitted by both sides in conjunction with the present motion. "Because a motion to dismiss based on lack of personal jurisdiction is inherently a matter requiring the resolution of factual issues outside the pleadings ... all pertinent documentation submitted by the parties may be considered in deciding the motion." *Mantello v. Hall*, 947 F.Supp. 92, 95 (S.D.N.Y.1996) (quotations and citations

omitted). Moreover, "In considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of service of process, 'a Court must look to matters outside the complaint to determine whether it has jurisdiction.'" *Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, 2004 WL 1781009, at *4, 2004 U.S. Dist. LEXIS 15668, at *11 (S.D.N.Y. Aug. 10, 2004) (quoting *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F.Supp.2d 382, 387 (S.D.N.Y.2002)).

(Complaint ¶¶ 12–13.) The Association elects members to serve on the Wisconsin Ginseng Board ("Ginseng Board"), which represents the interests of ginseng growers in Wisconsin, and markets and promotes Wisconsin ginseng in national and international markets. (*Id.* ¶¶ 14–16.)

The Board operates a showroom where Wisconsin ginseng growers display their root products. (*Id.* ¶ 17.) As part of its promotion of Wisconsin ginseng, the Ginseng Board operates the Wisconsin Seal Program ("Seal Program"), which is designed to assure consumers that the products they are buying contain 100% pure Wisconsin ginseng. (*Id.* ¶¶ 18–20.) Every barrel of ginseng in the Board's showroom has a seal affixed to it. (*Id.* ¶ 21.) All Wisconsin ginseng that Plaintiffs purchased at the Wisconsin Ginseng Board was delivered to Plaintiffs' warehouses in New York with seals attached. (Boehner Aff. ¶¶ 5–6.) As part of the Seal Program, which Plaintiffs participated in, the Ginseng Board also delivered seals to Plaintiffs in New York so they could affix them to individual packages of Wisconsin Ginseng they sold to the public. (Complaint ¶¶ 25–26; Boehner Aff. ¶¶ 4–6.) The Ginseng Board conducted regular inspections of Plaintiffs' warehouses and facilities. (Boehner Aff. ¶ 5.) Plaintiffs also sell Asian ginseng root, which is different than Wisconsin ginseng root; Plaintiffs do not place the Seal on the Asian ginseng they sell to the public. (Complaint ¶¶ 27–30; Boehner Aff. ¶ 3.)

Defendants Lyn Heise and Joan Eckes were elected members of the Ginseng Board. (Complaint ¶ 8.) Plaintiffs allege that on January 2, 2003, Defendants Heise and Eckes, on behalf of the Defendant Ginseng Board, wrote and sent a libelous and defamatory letter to United States Senator Russell Feingold of Wisconsin at his offices in Washington, D.C. (*Id.* ¶ 31.) The alleged letter indicates that because Plaintiff Boehner previously worked for the U.S. Customs Service, Plaintiffs have been able to import millions of pounds of Asian ginseng products that go untested by the U.S. Customs Service while the shipments are in port, and that inspections made at Springland's warehouse are conducted on switched samples. (*Id.*) The letter requests that Senator Feingold conduct an official inquiry and ensure that testing be done in port. (*Id.*) Plaintiffs allege that Defendants published the letter to disparage Plaintiffs' business reputation and punish them for selling imported ginseng root. (*Id.* ¶¶ 36–37.) According to Plaintiffs, the letter caused U.S. Customs agents in New York to repeatedly seize and hold Springland's ginseng inventory to determine whether the company was mislabeling Asian ginseng as Wisconsin ginseng, which resulted in delayed sales and loss of customers and profits. (Boehner Aff. ¶ 7.)

Attached to Defendants' motion papers are affidavits by Heise and Eckes, wherein they both state that they were never served in this action by a process server, no sheriff ever handed them any legal papers bearing the words "Summons" and "Complaint," and they did not find any summons or complaint on their doors. (Defs' Mem. Exs. B, Heise Aff. and C, Eckes Aff.) Defendants Heise and Eckes also state in their affidavits that they were made aware of the lawsuit by a telephone call from the Ginseng Board of Wisconsin, who later furnished them with copies of the Summons and Complaint. (*Id.*) According to an affidavit of process server Jody Barnett, submitted by Plaintiffs, Barnett went to the headquarters of the Wisconsin Ginseng Board in Wausau, Wisconsin, and met a man named Kirk Bauman, who represented to her that he was the treasurer of the Ginseng Board and was "in charge" of the office. (Pls.' Barnett Aff.) Barnett states that Bauman told her

that Eckes and Heise "were no longer members of the Ginseng Board, but that he had been authorized by Ms. Eckes and Ms. Heise to accept service of [sic] their behalf." (*Id.*) Also attached to Plaintiff Boehner's affidavit in opposition to the motion to dismiss are notarized, executed receipts of service, dated August 13, 2003, which state that Barnett left a copy of the summons and complaint with "Treasurer, Kirk Baumann." Defendants respond in their Reply papers with an affidavit by Baumann, who states that he was not authorized nor appointed by Heise or Eckes, nor did he inform any process server that he could accept legal process on their behalf. (Defs.' Reply Ex. A, Baumann Aff.) Heise and Eckes also submit additional affidavits indicating that they never authorized nor appointed Baumann to accept service on their behalf. (Defs.' Reply Ex. B, Heise and Eckes Affs.)

Plaintiffs commenced the present diversity action alleging five causes of action against all Defendants: (1) defamation and libel of Tom Fok, (2) defamation and libel of Jeffrey Boehner, (3) defamation and libel of Springland Trading, (4) interference with business relations, and (5) breach of contract, license and warranties. In addition to actual damages, Plaintiffs request punitive damages, lost profits, and a permanent injunction against any further publication or dissemination of defamatory statements by Defendants. (Complaint at 6–12.)

Defendants filed a motion to dismiss all causes of action of Plaintiffs' Complaint based on lack of subject matter jurisdiction, lack of personal jurisdiction, lack of venue, and improper service of Defendants Heise and Eckes, pursuant to Federal Rules of Civil Procedure 12(b)(1),(2), (3), and (5), or in the alternative, to transfer this case to the Western District of Wisconsin pursuant to 28 U.S.C.A. § 1406(a). (Defs.' Mem. Law 1–9.)[2]

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Defendants argue that they are immune to this Court's subject matter jurisdiction by virtue of the Eleventh Amendment to the U.S. Constitution because the Ginseng Board of Wisconsin is an arm of the state. (Defs.' Mem. at 3–4.)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). Under the Eleventh Amendment to the U.S. Constitution, states generally enjoy immunity from suit in federal court. *See, e.g., Board of Trustees v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). It is "well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This immunity from suit extends to state agencies and departments, as well state officials who act on its behalf. *See Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir.1999), cert. denied, 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000). However, it generally does not extend to counties and similar municipal corporations. *See Edelman,* 415 U.S. 651, at 668 n. 12, 94 S.Ct. 1347, 39 L.Ed.2d 662; *Lincoln County v. Luning,* 133 U.S. 529, 530, 10 S.Ct. 363, 33 L.Ed. 766 (1890); *Moor v. County of Alameda,* 411 U.S. 693, 719, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

**2.** As Defendant's Memorandum of Law was submitted to the Court without page or paragraph numbers, the Court numbered the document pages sequentially.

■ "(W)hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). "Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman,* 415 U.S. at 663, 94 S.Ct. 1347. *See also Hodgson v. Mississippi Dep't of Corrections,* 963 F.Supp. 776, 784 (W.D.Wis.1997); *Romco, Ltd. v. Outdoor Aluminum, Inc.,* 725 F.Supp. 1033, 1035 (W.D.Wis.1989). Other factors to consider include "whether the state entity can sue and be sued, whether it performs an essential governmental function and whether it enjoys a substantial degree of political independence from the state." *Hodgson,* 963 F.Supp. 776, 784 (citing *Ranyard v. Board of Regents,* 708 F.2d 1235, 1238 (7th Cir.1983)).

■ Under Wisconsin law, sovereign immunity depends on whether the statutes and regulations creating and defining the powers of the entity in question indicate an intention on the part of the state to make the entity an arm of the government, which would possibly qualify for immunity, as opposed to an "independent going concern," which would not be immune to suit. *Sullivan v. Board of Regents,* 209 Wis. 242, 244 N.W. 563, 564 (1932) (finding that a board of regents "is an agency of the state set up to perform certain specified administrative duties"). The main considerations when determining whether an entity is an agency of the state or an independent-going concern include:

(1) its designation as a body politic and corporate; (2) its statutory authorization to sue and be sued in its own name; (3) its power to convey real estate and dispose of personal property without express authority from the state; (4) its power to hold and disburse its own funds independent of state warrants; (5) its power to borrow money and issue and sell bonds and other evidences of indebtedness to accomplish its purposes; and (6) its ability to pay its debts out of rents and interest received from its acquired property.

*Walker v. University of Wisconsin Hosps.,* 198 Wis.2d 237, 542 N.W.2d 207, 210 (1995) (internal quotations omitted) (citing *Majerus v. Milwaukee County,* 39 Wis.2d 311, 159 N.W.2d 86, 87–88 (1968)) (finding that even though the state Armory Board had only some of the powers enumerated under *Sullivan,* the entity constituted an independent body, and was not an administrative arm of the state).

■ Defendants argue that the Ginseng Board is a state board. (Defs.' Mem. Law at 4.) Plaintiffs argue the Ginseng Board is a nonprofit corporation and trade association, and thus lacks immunity to suit. (Pls' Mem. at 8.) According to an affidavit of David Krautkramer, vice president of the Ginseng Board of Wisconsin, the board was created by an order through the Wisconsin Department of Agriculture, Trade and Consumer Protection, as authorized by Chapter 96, Wisconsin Statute Agriculture, Food and Trade practices (Agricultural Marketing Act) and is governed by that act and Wis. Admin. Code ATCP §§ 140 and 148. (Defs.' Mem. Law, Ex. D, Krautkramer Aff. ¶ 3.) The Wisconsin Department of Agriculture, Trade, and Consumer Protection controls assessments made by the Ginseng Board, which levies and collect assessments from producers, pursuant to Wis. Admin. Code ATCP § 148.06. (*Id.* ¶ 4.) Subsection one of Wis. Admin. Code ATCP § 148.02 states, "The

primary objectives of this marketing order are to improve the quality and expand sales of ginseng." Subsection two of ATCP § 148.02 states, that, "Funds may be used by the marketing board to sponsor projects in cooperation with any private or public organization to meet the objectives of this order."

Although created by a department of the state, unlike the Board of Regents in Sullivan, the Ginseng Board is an organization comprised of board members elected by members of the Association, who are Wisconsin ginseng producers and handlers. Moreover, there is nothing in the language of the statutes and regulations that formed or govern the Board to indicate an intention for the Ginseng Board to be considered a part of the state. The purpose of the Ginseng Board, to "expand sales of ginseng," is not a traditional government purpose and is more akin to a marketing organization. More importantly, the Ginseng Board is not funded through taxes, but through the levying of an assessment on Wisconsin ginseng producers and handlers, which means any recovery from this action would not be from the State. Therefore the Court finds that Defendant Ginseng Board is not an arm of the government for the purposes of immunity from suit under the Eleventh Amendment. Accordingly, Defendants' motion to dismiss on this basis is DENIED.

### B. Improper Service

Defendants Eckes and Heise move to dismiss the Complaint, pursuant to Fed. R.Civ.P. 12(b)(5), alleging insufficiency of service of process. (Defs' Mem. at 9.)

Federal Rule of Civil Procedure 4(e) provides that service may be made "pursuant to the law of the state ... in which service is effected." Plaintiffs contend that service was proper under Wisconsin Statute § 801.11(1)(d), which states that personal jurisdiction may be obtained, "by serving the summons ... upon the defendant or upon an agent authorized by appointment or by law to accept service of the summons for the defendant." In analyzing substituted service under Wis. Stat. § 801.11(1)(d), the Wisconsin Supreme Court concluded in *Mared Indus. v. Mansfield*, that the phrase, "authorized by appointment," refers only to actual authority, and even if an agent represents to a process server that he or she is an agent, such representations are "insufficient to establish the agent's authority to accept service on the principal's behalf." 277 Wis.2d 350, 690 N.W.2d 835, 846 (2005). The Wisconsin court came to this conclusion in part because of the established preference for personal service of process over substituted service of process, because personal service, "presents the greatest likelihood that the defendant actually receives notice of the action." *Id.* at 847.

■ Here, Defendants Heise and Eckes admit that they were informed of the lawsuit against them, and provided with the summons and complaint, therefore there is no question they received notice of the action against them. However, in light of the conflicting account of whether Baumann told the process server he was an authorized agent for the two Defendants, and, in light of Wisconsin case law, that even if he did state he was an agent, the Defendants' sworn affidavits stating that they never authorized Baumann by appointment to accept service on their behalf, leads this Court to conclude that service was improper. Plaintiffs shall effect proper service on Heise and Eckes in compliance with Wisconsin law, or the Federal Rules of service of process within 20 days of the date of this Memorandum and Order. Failure to effect proper service shall result in a dismissal of the Complaint against these Defendants.

## C. Personal Jurisdiction

Defendants allege that they are not subject to personal jurisdiction in New York because they do not have offices, bank accounts or pay taxes in New York. (Defs.' Mem. Law at 1–2.) Plaintiffs allege that Defendants are subject to personal jurisdiction in New York pursuant to New York's long-arm statute on two bases: Civil Practice Law and Rules (CPLR) §§ 302(a)(1) and 302(a)(3). In the face of a challenge to personal jurisdiction under Fed.R.Civ.P. 12(b)(2), the plaintiff has the burden of establishing in personam jurisdiction. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994). "Eventually personal jurisdiction must be established by a preponderance of the evidence, either at an evidentiary hearing or at trial. But where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir.1993).

To determine whether personal jurisdiction is proper over a nonresident defendant in a diversity case, "the court must look first to the long-arm statute of the forum state. . . . If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process." *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) (citing *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997); *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.), cert. denied, 519 U.S. 1006, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996)); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir.2002).

### 1. The New York Long–Arm Statute

Plaintiffs allege that Defendants are subject to New York's long-arm statute under the "transacting business" standard set forth in N.Y. CPLR § 302(a)(1).[3] Under this statute, a plaintiff must demonstrate that the nondomiciliary defendant transacted business in New York. *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986) (citing *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)). A nondomiciliary "transacts business" under CPLR § 302(a)(1) when he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Id.* (quoting *McKee Electric Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967)) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1228, 2 L.Ed.2d 1283 (1958)). A plaintiff also must show that the claim against the defendant arose from that business activity. *Id.* (citing *McGowan*, 52 N.Y.2d 268 at 272, 437 N.Y.S.2d 643, 419 N.E.2d 321) (stating that an "articulable nexus between the business transacted and the cause of the action sued upon" is essential). N.Y. CPLR 302(a)(1) has been construed by New York courts as providing that one specific event in New York that gives rise to a claim may satisfy the "transacting business" requirement of the long-arm statute. *George Reiner and Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551, 553 (N.Y. 1977). Additionally, transacting business by phone, email or mail from outside of New York, which causes goods or services to be provided in New York may be sufficient to satisfy the requirements of CPLR § 302(a)(1). *Liberatore v. Calvino*, 293

---

**3.** N.Y. CLS CPLR § 302(a)(1) states that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state."

A.D.2d 217, 742 N.Y.S.2d 291, 293 (1st Dep't 2002).

 The second prong of CPLR § 302(a)(1) provides that personal jurisdiction is extended over a defendant who "contracts anywhere to supply goods or services in the state." As cited by the Second Circuit, this provision covers cases where there are minimal contacts in New York, and, for example, a contract is made elsewhere for goods to be delivered or services to be performed in New York. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 789 (1999) (citations omitted). "Thus, even if a defendant never enters the state to negotiate one of these contracts, to complete performance or for any other reason, the second prong of § 302(a)(1) can provide long-arm jurisdiction over a defendant who has minimal contacts with the state and who has entered a contract anywhere to supply goods or services in the state." *Id. See also Island Wholesale Wood Supplies, Inc. v. Blanchard Indus., Inc.*, 101 A.D.2d 878, 476 N.Y.S.2d 192, 193–94 (2d Dep't 1984).

 In the instant case, Plaintiffs and Defendants entered into an agreement in Wisconsin for Defendant Ginseng Board to supply Plaintiff Springland Trading in New York with seals of authenticity pursuant to the Wisconsin Ginseng Seal Program. In accordance with this program, seals were routinely shipped to Plaintiffs in New York to be used in representing that Plaintiffs' products were authentic Wisconsin ginseng and Defendants routinely conducted inspections of Plaintiff's warehouses and business in New York. It was during the course of the performance of this agreement that Defendants allegedly defamed Plaintiffs, breached the agreement between the parties, and tortiously interfered with Plaintiffs' business opportunities by causing the U.S. Customs Service to seize and inspect their inventory. Therefore, the necessary nexus between the business of supplying seals and Plaintiffs' cause of action sufficiently exists. Accordingly, Defendants are subject to personal jurisdiction under New York's long-arm statute under N.Y. CPLR § 302(a)(1) because they transacted business in New York and contracted to supply goods or services within the state.

 Plaintiffs also allege personal jurisdiction over Defendants is proper under New York's long-arm statute, N.Y. §§ CPLR 302(a)(3)(i) and 302(a)(3)(ii), which confers personal jurisdiction over a foreign Defendant if he or she:

> commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. § CPLR 302(a)(3).

Plaintiffs argue that Defendants committed the tort of interference with a business relationship by wrongfully causing the U.S. Customs Service to seize and inspect Plaintiff's ginseng inventory, thereby causing injury to the Plaintiffs in the form of lost profits. (Pls.'s Mem. Law at 14.) Plaintiffs further allege that these damages and lost profits were the foreseeable consequence in New York of Defendants' action of writing the allegedly defamatory letter. (*Id.* at 15.) Additionally, Plaintiffs allege that Defendants received substantial revenue from interstate com-

merce due to their receipt of payments from the Seal Program. (Pls.' Mem. Law at 14–15.) While the underlying merit of these claims has yet to be established, Plaintiffs have met their burden of establishing a prima facie case of in personam jurisdiction over Defendants pursuant to CPLR § 302(a)(3)(i) by alleging that Defendants derived substantial revenue in New York through fees collected from local ginseng merchants participating in the Seal Program. Additionally, Plaintiffs also have established a prima facie case of personal jurisdiction pursuant to CPLR § 302(a)(3)(ii) by alleging that Defendants' allegedly tortious act was designed to cause additional inspections by the U.S. Custom's service to interfere with Plaintiffs' business in New York while deriving substantial revenue from interstate commerce. (Pls.' Mem. Law at 15.) Accordingly, Plaintiffs have established a prima facie claim of personal jurisdiction over Defendants under CPLR § 302(a)(3)(i) and (ii).

## 2. Due Process

The second prong of personal jurisdiction requires the Court to determine whether the exercise of personal jurisdiction over a nonresident defendant comports with due process under the standard laid out in *International Shoe Co. v. Washington*. Exercise of personal jurisdiction is reasonable if the defendant has had "certain minimum contacts with [the forum state], such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). As the Second Circuit has noted, the due process test for personal jurisdiction has "two related concepts: the 'minimum contacts' inquiry and the 'reasonableness' inquiry."

*Metropolitan Life Ins. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.1996).

### a. Minimum Contacts

The minimum contacts test rests on whether a defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). A nonresident defendant has minimum contacts with the forum state if he or she commits "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Moreover, a defendant's contacts with the forum must be "continuous and systematic," or the suit must arise out of or be related to those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984).

Plaintiffs argue that because of Defendants' inspections as part of the Seal Program, Defendants observed Plaintiffs' sale of Asian ginseng, and as a result, Defendants sent the allegedly defamatory letter to Senator Feingold requesting additional customs inspections and testing of Plaintiffs' products, which is the heart of the instant lawsuit. (Pls.' Mem. Law at 7.) Plaintiffs agreed with Defendants to participate in the Seal Program for the purpose of promoting the sales of authentic Wisconsin ginseng in New York. For this reason, it is reasonable for Defendant to anticipate being haled into court in New York to defend against claims arising from such contacts. As discussed above, Defendants purposefully availed themselves of the privilege of conducting activities in New York by routinely conducting inspec-

tions of Plaintiffs' facilities in New York to ensure that the contract entered into with Plaintiffs was carried out in a proscribed manner. Thus, Defendants have the requisite minimum contacts with New York to satisfy due process requirements.

### b. Reasonableness

 Beyond minimum contacts, Courts consider additional factors to determine whether the exercise of personal jurisdiction "would comport with 'fair play and substantial justice.'" *Burger King v. Rudzewicz,* 471 U.S. 462, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *International Shoe Co.,* 326 U.S. 310 at 320, 66 S.Ct. 154, 90 L.Ed. 95.) These factors include: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering substantive social policies. *Id.* at 477, 105 S.Ct. 2174 (citing *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559). Importantly, however, where, as here, it has already been determined that the defendant has minimum contacts with the forum state, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

 Defendants argue that defending this lawsuit in New York would impose a "substantial burden" on them. (Defs.' Mem. Law at 2–3.) While there may be difficulties associated with requiring Defendants, who reside in Wisconsin, to defend suit in New York, "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Metropolitan Life Ins.,* 84 F.3d 560, 574. Moreover, given Defendants' routine inspections of Plaintiffs' business in New York, it would appear that litigating this case in New York would not impose any unusual burden on Defendant.

As for the remaining "reasonableness" factors, Plaintiffs' interest in obtaining convenient and effective relief certainly would be furthered by litigating this case in New York, where Plaintiff company is incorporated and has its principal place of business. *See Bradley v. Staubach,* No. 03 Civ. 4160, 2004 WL 830066, at *6, 2004 U.S. Dist. LEXIS 6584 (S.D.N.Y. Apr. 13, 2004) (finding that because plaintiff was a New York resident, he had a strong interest in litigating action in New York); *Afloat in France, Inc. v. Bancroft Cruises, Ltd.,* No. 03 Civ. 917, 2003 WL 22400213, at *8, 2003 U.S. Dist. LEXIS 18703 (S.D.N.Y. Oct. 21, 2003) (stating that plaintiff had a strong interest in litigating action in New York because it is a New York corporation with its principal place of business in New York). Meanwhile, the judicial efficiency factor, which primarily involves "where witnesses and evidence are likely to be located," *Metropolitan Life Ins.,* 84 F.3d at 574, favors neither forum because, as the record makes clear, some of the potential evidence and witnesses in this case likely will be located in New York and in Wisconsin, as well as possibly Washington, D.C. *See Bank Brussels Lambert,* 305 F.3d 120, at 130 (holding that the judicial efficiency factor "both supports and undermines" defendant's argument against personal jurisdiction where many of the witnesses and much of the evidence will likely be located in two places.) Finally, because neither party has "suggested or shown that any substantive social policies would be furthered or undermined by permitting the case against [defendant] to go forward in New York," this factor "does not weigh in either party's favor." *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 245 (2d Cir.1999).

In sum, because the reasonableness factors do not present a compelling case that the Court's exercise of personal jurisdiction over Defendants in this case would be unreasonable, such exercise comports with the requirements of due process. Accordingly, as the requirements of CPLR § 302(a) and due process have been satisfied, the Court may properly exercise personal jurisdiction over all Defendants in this case. Defendants' motion to dismiss on this basis is denied.

## D. Lack of Venue Under 28 U.S.C. § 1391(a)

Defendants move to dismiss the case for improper venue. When considering such a motion, the Court must accept the facts alleged in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Rey–Willis v. Citibank, N.A.*, No. 23 Civ. 2006, 2003 U.S. Dist. LEXIS 12760, at *10, 2003 WL 21714947, at *3 (S.D.N.Y. July 23, 2003); *Imagineering, Inc. v. Lukingbeal*, No. 94 Civ. 2589, 1996 U.S. Dist. LEXIS 3939, *5, 1996 WL 148431, *2 (S.D.N.Y. Apr. 2, 1996) (internal quotations and citations omitted).

When jurisdiction is based on diversity, pursuant to 28 U.S.C. § 1391, venue may be based on one of three grounds, only one of which is relevant here. Under 28 U.S.C. § 1391(a)(2), venue is proper "in any district in which a substantial part of the events or omissions giving rise to the claim occurred." *See also Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 866–67 (2d Cir.1992); *Greenblatt v. Gluck*, 265 F.Supp.2d 346, 352 (S.D.N.Y.2003). When venue is challenged, Plaintiff "bears the burden of demonstrating that 'a substantial part of the events or omissions giving rise to the claim occurred' in this district." *G.F.C. Fashions v. Goody's Family Clothing*, No. 97 Civ. 0730, 1998 U.S. Dist. LEXIS 1989, *5, 1998 WL 78292, *5 (S.D.N.Y. Feb. 24, 1998) (quoting *D'Anton Jos, S.L. v. Doll Factory, Inc.*, 937 F.Supp. 320, 321 (S.D.N.Y.1996)).

Plaintiffs assert that a substantial part of the events giving rise to their claims occurred in the Southern District of New York because "defendants' malicious conduct, aimed at improperly interfering and competing [with] plaintiffs' business in New York, culminated with U.S. Customs Agents continually seizing and inspecting plaintiffs' ginseng inventory in New York, within the Southern District." (Pls.' Mem Law at 16.) However, Defendants allege that Wisconsin is the locus of operative fact because the allegedly defamatory letter was written by Wisconsin Defendants and mailed from Wisconsin to the U.S. Senator for Wisconsin in Washington, D.C. (Defs.' Mem. Law at 6.)

Ordinarily a plaintiff's choice of forum is accorded great deference and it should not be disturbed unless the balance of several factors is strongly in favor of the defendants. *Clay Paky, S.P.A. v. Vari–Lite, Inc.*, 2000 WL 977709, *7, 2000 U.S. Dist. LEXIS 9802 (S.D.N.Y. July 14, 2000). However, a plaintiff's choice "is accorded less weight to the degree that the case's operative facts have little or no connection with the transferor forum." *Totonelly v. Cardiology Assocs. of Corpus Christi*, 932 F.Supp. 621, 623 (S.D.N.Y.1996). Defendants are correct that the alleged act of writing the letter at the heart of this lawsuit occurred in Wisconsin, however, the subject of the letter refers to activities taking place in New York, by a company headquartered in New York, and the action requested in the letter is to be taken in New York. Accordingly, the Court finds that a substantial part of the events giving rise to this cause of action pertain to the Southern District of New York, and therefore, the venue choice by Plaintiffs, should not be disturbed. Accordingly, Defen-

dants' motion to dismiss based on improper venue is denied.

### E. Transfer of Venue Under 28 U.S.C. § 1404

In the alternative, Defendants argue that the Court should transfer this case to the Western District of Wisconsin pursuant to 28 U.S.C. § 1404(a). (Defs.' Mem. Law at 7.)

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992). "The burden of demonstrating the desirability of transfer lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice." *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F.Supp.2d 203, 208 (S.D.N.Y.1998) (internal quotations and citations omitted); *see also In re Nematron Corp. Secs. Litig.*, 30 F.Supp.2d 397, 400 (S.D.N.Y.1998). The inquiry on a motion to transfer is two-fold. First, the district court must determine whether the case could have been brought in the proposed transferee district. *Herbert v. Elec. Arts, Inc.*, 325 F.Supp.2d 282, 285 (S.D.N.Y. 2004); *In re Nematron*, 30 F.Supp.2d at 400. If the answer to this question is "yes," then the court must consider several factors to determine whether transfer is appropriate. *Id.; see also In re Nematron*, 30 F.Supp.2d at 400; *Orb Factory*, 6 F.Supp.2d at 208. In making this second determination, a district court generally considers the following factors: (1) convenience of witnesses; (2) convenience of the parties; (3) location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice. *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, No. 04 Civ. 7369, 2004 WL 2314424, at *1 (S.D.N.Y. Oct. 13, 2004); *Herbert*, 325 F.Supp.2d at 285–86; *Orb Factory*, 6 F.Supp.2d at 208.

Because neither party disputes that Plaintiffs' claims could have been brought in the Western District of Wisconsin, the proposed transferee court, this Court will proceed to weigh the convenience/fairness factors. Because the weight accorded a plaintiff's forum choice affects the burden a defendant must meet on the remaining eight factors, the Court will consider this factor first.

"A court generally accords significant weight to a plaintiff's forum choice." *Herbert*, 325 F.Supp.2d at 291 (citations omitted). "Where the factors are equally balanced, the plaintiff is entitled to its choice of forum." *Orb Factory*, 6 F.Supp.2d at 210 (citing *Teachers Ins. and Annuity Ass'n of America v. Butler*, 592 F.Supp. 1097, 1106 (S.D.N.Y.1984)). "Further, the plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim, or where the plaintiff is a resident of the forum district." *Id.* at 210 (citations omitted).

As previously discussed, a substantial part of the events underlying the claim occurred in New York, therefore,

Plaintiffs' choice of the Southern District of New York as the forum in which to litigate their claims is entitled to significant weight. Thus, Defendants must show that the remaining eight factors weigh heavily in favor of the Western District of Wisconsin for the Court to grant the transfer motion.

In the present case, witnesses most likely will come from New York, Wisconsin, and possibly elsewhere. Thus, this factor does not strongly favor transfer. As for convenience of the parties themselves, Defendants argue that they will be inconvenienced by litigating this case in New York, which is 1,700 miles away, whereas Plaintiffs already have demonstrated a willingness to travel to Wisconsin through entering into a contract there. (Defs.' Mem. Law at 8.) Overall, this factor at most only slightly favors Defendants.

As with potential witnesses, the potentially relevant documents and other sources of proof in this case are located in New York, Wisconsin, and other places. Plaintiffs have expressed their intent to utilize U.S. Customs Services agents in New York in proving their claim, which demonstrates a slightly stronger rationale favoring a New York forum.

As previously discussed, while the defamation claims arose out of a letter allegedly written in Wisconsin, the locus of operative facts involves events that occurred in New York, thus favoring venue in New York. Defendants have offered no evidence that any potential witnesses in this case might refuse to testify or otherwise appear in this case. Thus, Defendants have failed to meet their burden with respect to this factor.

As for the relative means of the parties, "[a]lthough courts can consider the relative means of parties, this factor is not entitled to great weight where plaintiff and defendant are both corporations." *Toy Biz, Inc. v. Centuri Corp.*, 990 F.Supp. 328, 331 (S.D.N.Y.1998). Further, "any party arguing for a transfer on this basis must offer documentation showing that granting or denying the transfer would be unduly burdensome." *Student Advantage, Inc. v. Int'l Student Exchange Cards, Inc.*, No. 00 Civ. 1971, 2000 WL 1290585, at *8, 2000 U.S. Dist. LEXIS 13138 (S.D.N.Y. Sept. 13, 2000). Defendants have failed to show that litigating the present case in New York would be unduly burdensome. Thus, this factor also does not merit transfer.

As to familiarity with governing law, Defendants have not shown how this Court would be insufficiently familiar with governing law in this diversity action to warrant transfer. Finally, in regard to judicial economy and the interests of justice, Defendants have stated that it would be inconvenient to the parties to have to litigate this dispute 1,700 miles away in New York. However, that statement, without further indication of an undue burden is insufficient to overcome the Defendants' burden in demonstrating transfer, as inevitably one of the parties will be inconvenienced in this manner.

Overall, consideration of the convenience/fairness factors makes clear that Defendants have failed to meet their burden of clearly demonstrating that transfer to the Western District of Wisconsin is warranted under 28 U.S.C. § 1404(a). Accordingly, this motion is DENIED.

## III. CONCLUSION

Having reviewed all the pleadings in this case, the Court hereby ORDERS that: Defendants' motion to dismiss the complaint against Defendants is DENIED in all respects; Defendants' motion to transfer venue is DENIED. Plaintiffs shall effect proper service on Defendants Heise and Eckes in compliance with Wisconsin law, or the Federal Rules of service of process within 20 days of the date of this

Order. Defendants shall file an Answer within 60 days of the date of this Order. SO ORDERED.